**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Benjamin F. GAY III, Roy M. Porter,**
**Defendants–Appellants.**

**Nos. 90–10345, 90–10366.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 16, 1992.

Decided June 16, 1992.

Michael Levine, Asst. Federal Public Defender, Portland, Or., for defendants-appellants.

R. Steven Lapham, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before HUG, TANG, and NELSON, Circuit Judges.

TANG, Circuit Judge:

Benjamin Gay III and Roy Porter were officers of National Toll Free Marketing ("NTFM"), a company engaged in direct marketing of products and services. In January 1988, the government charged Gay, Porter, and others with using NTFM to defraud investors through false and misleading representations. In April 1990, a jury convicted Gay of mail fraud, interstate transportation of fraudulently obtained property, and failure to file income tax returns. The same jury found Porter guilty of mail fraud and interstate transportation of fraudulently obtained property. Gay and Porter appeal, alleging various errors in the district court's conduct of the trial. We affirm.[1]

## DISCUSSION

### I. *Dismissal of Juror*

Gay and Porter argue that the district court abused its discretion when it replaced with an alternate a juror who failed to appear for trial. Juror Fry was absent when trial resumed on January 31, 1990, after a two month recess. Contacted at home, juror Fry explained that she thought the trial was to reconvene on Friday, February 2nd. Juror Fry lived approximately three hours away from the courthouse.

The district court polled the attorneys and the jurors about the possibility of delaying or rescheduling the start of the trial. The inquiry disclosed numerous hardships and barriers to altering the trial time. After a side bar conference, the court decided to excuse juror Fry:

> The Court recalls that Miss Fry, juror number seven, previously mixed up a date when she was supposed to be here, and the Court is upset about the fact that she feels that she was supposed to be here on February [2nd]. There is no basis for this at all. We have never been in trial on Friday. No one has ever used the date February 2nd.

---

1. This opinion addresses only five of the arguments raised by Gay and Porter on appeal. Their remaining arguments are addressed in an unpublished memorandum disposition filed concurrently with this opinion.

So, I am wondering about the clarity of her thinking and her ability to relate to our problems and to the issues in this case.

In any event, at the suggestion of the U.S. Attorney, and because of our terrible scheduling problems with the case, I am going to excuse Miss Fry, juror number seven, over the objection of defendant Gay, who would prefer she not be excused.

■ We review the district court's decision to replace a juror with an alternate for an abuse of discretion. *United States v. Hohman,* 825 F.2d 1363, 1364 (9th Cir. 1987); *United States v. Perez,* 658 F.2d 654, 663 (9th Cir.1981).

■ Gay and Porter argue first that the substitution unconstitutionally deprived them of their " 'valued right to have [their] trial completed by a particular tribunal.' " *United States v. Jorn,* 400 U.S. 470, 480, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971) (quoting *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)).

We reject this contention. While the Constitution recognizes a defendant's right to be tried by the jury originally selected, the Supreme Court has cautioned that this is a limited right that must, in some instances, "be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade,* 336 U.S. at 689, 69 S.Ct. at 837; *see also Jorn,* 400 U.S. at 480, 91 S.Ct. at 554 (same). In *Jorn,* the Supreme Court specifically cited the trial court's need to manage juries, witnesses, parties, and attorneys, and to set schedules as factors that can outweigh a defendant's right to a particular jury. 400 U.S. at 479–80, 91 S.Ct. at 554–55.

In this case, the decision to replace juror Fry reflected the district court's legitimate concern with supervising the progress of the trial and ensuring that a verdict issued in a manner consonant with the defendants' rights to due process and to a speedy adjudication of the charges against them. Ju-

ror Fry was stricken not because of a single isolated incident of tardiness. Rather, the court noted that the failure to appear was only the most recent manifestation of juror Fry's confusion. The scheduling and management tasks confronting the district court in this lengthy criminal trial involving six defendants were monumental. A juror with a proclivity for tardiness or confusing trial dates could wreak havoc on the trial schedule and seriously impede both the prosecution's and defense's presentations of their cases.[2]

■ Gay and Porter also argue that the switch in jurors transgressed Fed. R.Crim.P. 24(c). Rule 24(c) instructs that "[a]lternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties." Gay and Porter argue that the district court abused its discretion in concluding that Fry was "unable or disqualified to perform" as a juror.

We affirm the district court's exercise of discretion. The district court has the responsibility "affirmatively to detect potentially contaminating influences on juror deliberations and implement appropriate measures to remedy juror misconduct." *Perez,* 658 F.2d at 663. Due deference must be accorded the trial judge's firsthand exposure to the jurors and to the impact of their conduct on the trial. *See id.* In complex cases like the present, involving numerous parties, voluminous evidence, and lengthy trial proceedings, the district court must be given an especially wide berth.

Other courts have sustained the replacement of jurors under similar circumstances. In *United States v. Rodriguez,* 573 F.2d 330 (5th Cir.1978), the Fifth Circuit affirmed the substitution of an alternate for a juror who had "called the clerk to say that he had chosen to go to work that day rather than to come to court." *Id.* at 332. The Fifth Circuit observed:

---

2. Gay and Porter do not argue that they had any specific opposition to the replacement juror or any particular attachment to Fry. *Cf. United States v. Rodriguez,* 573 F.2d 330, 332–33 (5th Cir.1978) (white alternate juror replaces African American juror in case where defendant was a minority).

A juror's absence is an observable fact. His absence manifestly interferes with the prompt trial of a case. Hence when a juror is absent from court for a period sufficiently long to interfere with the reasonable dispatch of business there may be a sound basis for his dismissal. *Id.* (quotation omitted).

In *United States v. Peters,* 617 F.2d 503 (7th Cir.1980), the Seventh Circuit affirmed a juror substitution where the juror was ten minutes late for court. The court observed that the trial judge acted out of a concern for maintaining the trial schedule and to avoid an additional day of courtroom proceedings. *Id.* at 505. The Seventh Circuit found no abuse of discretion, noting that "it is difficult to imagine a more complete disqualification than a failure to appear." *Id.; see also United States v. Domenech,* 476 F.2d 1229, 1232 (2d Cir.) (replacement of juror who was ten minutes late not an abuse of discretion given court's scheduling concerns and possible desire to avert a night sitting), *cert. denied,* 414 U.S. 840, 94 S.Ct. 95, 38 L.Ed.2d 77 (1973), *cited in United States v. Lustig,* 555 F.2d 737, 745 (9th Cir.), *cert. denied,* 434 U.S. 926, 98 S.Ct. 408, 54 L.Ed.2d 285 (1977).

Whether a juror's absence is sufficiently disruptive to warrant removal is thus a function of the managerial complexity of the case, the flexibility of the court's and parties' schedules, and the availability of witnesses and other evidence. In this case, each of those considerations weighed in favor of replacing juror Fry. The district court also took into account the juror's prior confusion about dates. Considering all the circumstances, the decision to strike juror Fry did not amount to an abuse of discretion. *See United States v. Echavarria–Olarte,* 904 F.2d 1391, 1395 (9th Cir. 1990) (decision to substitute juror "is, indeed, a close question, but it is the kind of question peculiarly suited to the exercise of discretion by the trial judge").

II. *Failure to Voir Dire after Recess*

■ Gay and Porter contend that the district court committed reversible error by failing to re-voir dire the jury following a sixty-one day recess in the trial. The district court, with the agreement of the parties, interrupted Gay's and Porter's criminal trial at the end of November 1989, to preside over another trial. The Gay and Porter trial did not reconvene until January 31, 1990. Gay and Porter argue that the district court had an independent obligation to voir dire the jury when the trial recommenced to ensure that intervening events had not disqualified any of the jurors from service.

Because Gay and Porter did not request supplemental voir dire in the district court, we review for plain error. *See United States v. Hernandez,* 876 F.2d 774, 777 (9th Cir.), *cert. denied,* 493 U.S. 863, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989). The question therefore is not whether supplemental voir dire would have been advisable or the preferred course of conduct, but rather whether the failure to re-voir dire constituted a "highly prejudicial error affecting substantial rights." *United States v. Bustillo,* 789 F.2d 1364, 1367 (9th Cir. 1986) (quotation omitted).

This circuit has yet to address the district court's obligation to conduct voir dire following a lengthy delay in a criminal trial. Both the Fifth and the Tenth Circuits have held that a district court's failure to conduct supplemental voir dire following a significant delay between the selection of the jury and the commencement of the trial constitutes reversible error. *United States v. Franklin,* 700 F.2d 1241, 1242 (10th Cir. 1983); *United States v. Price,* 573 F.2d 356, 363–64 (5th Cir.1978). In both *Franklin* and *Price,* jurors had served on different juries during the time between selection for the defendant's case and the actual start of the trial. The courts reasoned that supplemental voir dire was necessary to ensure that the jurors' exposure to additional court proceedings did not affect their ability to adjudicate the particular defendant's case impartially. *Franklin,* 700 F.2d at 1242; *Price,* 573 F.2d at 363–64 ("Forty-nine days elapsed between jury selection and the commencement of testimony. Events occurring during such a signif-

icant delay may have substantial effects upon the personality or preconceptions of the jury and seriously dilute the effectiveness of the prior exercise of peremptory challenges.").

Gay and Porter argue that this same rationale applies to their case. There are two problems with Gay's and Porter's position, however.

■ First, a defendant waives the right to supplemental voir dire following a delay if she or he fails to raise the issue before the district court. *Huls v. Lockhart*, 958 F.2d 212, 215–16 (8th Cir.1992); *Franklin*, 700 F.2d at 1242 n. 3; *United States v. Capua*, 656 F.2d 1033, 1036 (5th Cir.1981); *United States v. Garza*, 574 F.2d 298, 303–04 (5th Cir.1978); *United States v. Eldridge*, 569 F.2d 319, 320 (5th Cir.), *cert. denied*, 436 U.S. 929, 98 S.Ct. 2827, 56 L.Ed.2d 773 (1978). Gay's and Porter's failure to request supplemental voir dire thus cannot survive plain error review.

Second, the supplemental voir dire rule was developed as a response to concerns about the impact of interim jury service on jurors' impartiality. In this case, Gay and Porter have cited no basis, systemic or otherwise, for suspecting that some jurors might have been tainted during the recess. Consequently, even assuming that Gay's and Porter's claim was not waived, they have not demonstrated substantial prejudice.[3]

III. *Jury Instruction on Intent to Defraud*

■ Gay and Porter argue that the district court's jury instruction, permitting conviction on the basis of reckless indifference to the truth, improperly stated the law. The instruction, they contend, should have required the jury to find a subjective intent to defraud.

We review de novo the question whether the jury instruction misstated as a matter of law the intent element of mail fraud. *See United States v. Spillone*, 879 F.2d 514, 525 (9th Cir.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990).

We affirm the district court's instruction. We have repeatedly held that reckless indifference alone will support a mail fraud conviction. *See, e.g., United States v. Schaflander*, 719 F.2d 1024, 1027 (9th Cir. 1983) ("The instruction correctly stated the law in this Circuit that reckless disregard for truth or falsity is sufficient to sustain a mail fraud conviction."), *cert. denied*, 467 U.S. 1216, 104 S.Ct. 2660, 81 L.Ed.2d 366 (1984); *United States v. Cusino*, 694 F.2d 185, 187 (9th Cir.1982) ("Fraudulent intent is shown if a representation is made with reckless indifference to its truth or falsity."), *cert. denied*, 461 U.S. 932, 103 S.Ct. 2096, 77 L.Ed.2d 305 (1983); *United States v. Federbush*, 625 F.2d 246, 255 (9th Cir. 1980) (upholding instruction reading: "A statement or representation is 'false or fraudulent' within the meaning of this statute, if known to be untrue, or made with reckless indifference as to its truth or falsity, and made or caused to be made with the intent to deceive."); *United States v. Farris*, 614 F.2d 634, 638 (9th Cir.1979), *cert. denied*, 447 U.S. 926, 100 S.Ct. 3022, 65 L.Ed.2d 1120 (1980); *United States v. Love*, 535 F.2d 1152, 1157–58 (9th Cir.), *cert. denied*, 429 U.S. 847, 97 S.Ct. 130, 50 L.Ed.2d 119 (1976); *Irwin v. United States*, 338 F.2d 770, 774 (9th Cir.1964), *cert. denied*, 381 U.S. 911, 85 S.Ct. 1530, 14 L.Ed.2d 433 (1965).

Gay and Porter concede that the instruction accords with Ninth Circuit precedent. They argue, however, that the Supreme Court's recent decision in *Cheek v. United States*, —— U.S. ——, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), entitles us to reject the foregoing cases and hold that only actual knowledge will sustain a federal mail or property fraud conviction.

---

3. The right to supplemental voir dire is a prophylactic rule, not a constitutional right. *Capua*, 656 F.2d at 1038 ("[W]hile these procedures implement the right to trial by an impartial jury, they are but means to an end, not an inherent part of the sixth amendment.") (foot-note omitted). Thus Gay's and Porter's constitutional rights are implicated by the lack of supplemental voir dire only to the extent that they can show substantial prejudice. *See id.* at 1038 n. 3.

■ We decline Gay's and Porter's invitation to circumvent Ninth Circuit precedent. As a general rule, one three-judge panel of this court cannot reconsider or overrule the decision of a prior panel. *See United States v. Mandel*, 914 F.2d 1215, 1220–21 (9th Cir.1990). An exception to this rule arises when "an intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point." *United States v. Lancellotti*, 761 F.2d 1363, 1366 (9th Cir.1985).

The Supreme Court's decision in *Cheek* does not require us to revisit the question whether reckless indifference will support a mail or property fraud conviction. *Cheek* interpreted sections 7201 and 7203 of the Internal Revenue Code. These sections expressly condition a defendant's guilt on a finding that she or he acted "willfully." *Cheek* did not purport to speak to the *mens rea* requirement of other federal statutes where willfulness is not an element of the crime. *See United States v. Hildebrandt*, 961 F.2d 116, (8th Cir.1992) (refusing to extend *Cheek* beyond willful failure to file income tax cases); *United States v. Donovan*, No. 91–1574, 1992 WL 18217, at *3, 1992 U.S.App. LEXIS 1535, at *7–9, (1st Cir. Feb. 6, 1992) (confining *Cheek* to the criminal tax prosecution context); *United States v. Dashney*, 937 F.2d 532, 540 (10th Cir.) ("*Cheek* involves only certain criminal tax statutes, and we see no reason to extend similar statutory interpretation into the straightforward currency reporting requirements."), *cert. denied*, ── U.S. ──, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991). The Supreme Court neither stated nor implied that its holding should be transported to the federal mail and property fraud statutes. These statutes, we note, do not even contain a willfulness requirement. *See* 18 U.S.C. §§ 1341, 2314.[4]

In sum, we will not deviate from precedent approving the instruction given by the district court. *Cheek* neither "undermines" earlier cases nor is "closely on point" to the case at hand.

IV. *Limiting Instruction*

■ After Gay testified, the government introduced on cross-examination a prior civil injunction issued against Gay in conjunction with his activities at the Personnel Institute of California. The injunction prohibited Gay from engaging in many of the same activities he had undertaken as head of NTFM.

The district court admitted the civil injunction as evidence pursuant to Fed. R.Evid. 404(b) and 608(b). Federal Rule of Evidence 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Federal Rule of Evidence 608(b) addresses the admissibility of evidence of other acts by a witness for purposes of cross-examination:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility . . . may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

---

4. Occasionally we have sanctioned the use of a willfulness instruction for crimes requiring a finding of specific intent. *See, e.g., United States v. Sehnal*, 930 F.2d 1420, 1427 (9th Cir.), *cert. denied*, ── U.S. ──, 112 S.Ct. 300, 116 L.Ed.2d 244 (1991); *United States v. Drew*, 722 F.2d 551, 553 (9th Cir.1983), *cert. denied*, 467 U.S. 1216, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984). All that these cases recognize, however, is that a finding of willfulness necessarily subsumes a finding of intent. These cases do not equate willfulness and specific intent in the manner advocated by Gay and Porter.

The district court accompanied admission of the evidence with a limiting instruction, advising the jury that the injunction was admitted "only for the purposes of cross-examining Mr. Gay regarding his personal credibility and his state of mind and is to be considered by the jury only for that purpose." The court added that "there is no evidence that Mr. Porter ... had any knowledge of the ... injunction, and it is not to be considered by you in any way in deciding the cases against [him]."

■ Gay argues that this limiting instruction effectively portrayed Gay as a liar, "amounted to a directed verdict of guilt," and, therefore, constitutes reversible error. Gay insists that the evidence was relevant only to his state of mind and that the credibility issue should have been left for the jury. Gay also notes that the district court did not advise the jury that they could decide what weight to give the evidence.

Gay did not object to the limiting instruction at trial. Consequently, we review the district court's formulation of the limiting instruction for plain error. *Hernandez*, 876 F.2d at 777.

■ We reject Gay's contention. Federal Rule of Evidence 404 restricts the use of evidence solely for purposes of demonstrating a criminal proclivity. It does not proscribe the use of other act evidence as an impeachment tool during cross-examination. We thus agree with the Fourth Circuit that 404(b) evidence may be used for impeachment purposes. *United States v. Stockton*, 788 F.2d 210, 219 n. 15 (4th Cir.) ("Although impeachment of a witness is not among the 'other purposes' explicitly listed in Rule 404(b) by way of example, that list is not exhaustive, and impeachment qualifies as a permissible purpose for the introduction of other crimes."), *cert. denied*, 479 U.S. 840, 107 S.Ct. 147, 93 L.Ed.2d 89 (1986); *cf. United States v. Moreno*, 649 F.2d 309, 315 (5th Cir.1981) (other acts evidence may be used to rehabilitate a witness).

Federal Rule of Evidence 608(b), moreover, specifically contemplates inquiries into prior behavior in order to challenge a witness's credibility. Evidence of prior frauds is considered probative of the witness's character for truthfulness or untruthfulness. *Varhol v. National R.R. Passenger Corp.*, 909 F.2d 1557, 1567 (7th Cir.1990); *see also United States v. Amahia*, 825 F.2d 177, 180–81 (8th Cir.1987).

The district court thus did not err in advising the jury that it could consider the injunction in assessing Gay's credibility. Nor did the district court's instruction intrude upon the jury's province to decide questions of credibility. Gay had testified on direct that he was a successful businessman. The injunction was an evidentiary riposte by the prosecution. The district court in no way indicated which of the two the jury should believe. And the court properly left to the jury's discretion and independent judgment the decision of how much impact (if any) the injunction would have.

## V. *"Puffing" Instruction*

■ Gay and Porter requested that the district court instruct the jury that:

A scheme to defraud is not necessarily to be inferred from an unprofitable venture. Mere puffing, exaggerated enthusiasm, and high pressure salesmanship do not constitute legal fraud.

The district court gave the first sentence of this proposed instruction to the jury, but refused to include the second sentence referring to mere puffing and salesmanship. Gay and Porter contend that this omission represents reversible error.

The standard of review to be applied to the district court's rejection of a defendant's proposed jury instruction is in flux in this circuit. *Compare United States v. Wagner*, 834 F.2d 1474, 1486 (9th Cir.1987) (de novo) *and United States v. Doubleday*, 804 F.2d 1091, 1093 (9th Cir.1986) (de novo), *cert. denied*, 481 U.S. 1005, 107 S.Ct. 1628, 95 L.Ed.2d 201 (1987) *with United States v. Busby*, 780 F.2d 804, 806 (9th Cir.1986) (abuse of discretion) *and United States v. Fleishman*, 684 F.2d 1329, 1342 (9th Cir.) (abuse of discretion), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982);

see also *United States v. Sotelo–Murillo,* 887 F.2d 176, 179 (9th Cir.1989) (citing conflicting cases). We need not resolve this conflict because the district court's decision not to give the defendants' proposed instruction can be sustained even under the more scrutinizing de novo review, for two reasons.

First, Gay's and Porter's proposed instruction failed to articulate the distinction between "puffing" and fraudulent misrepresentation. "Puffing" concerns expressions of opinion, as opposed to the knowingly false statements of fact which the law proscribes. *United States v. Shelton,* 669 F.2d 446, 465 (7th Cir.), *cert. denied,* 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 454 (1982). Absent an explication of the difference between "puffing" and fraudulent misrepresentation, the defendants' proposed instruction was more likely to confuse the jury than help it reach an informed decision. *Id.* ("There is no requirement to give an instruction that is inaccurate or misleading.").

Second, the district court's other instructions to the jury adequately conveyed the gist of a "puffing" defense. The district court instructed the jury that "[g]ood faith constitutes a complete defense" and that "[o]ne who acts with honest intention is not chargeable with fraudulent intent. One who expresses an opinion honestly held by him, or a belief honestly entertained by him, is it [sic] not chargeable with fraudulent intent even though such opinion is erroneous and such belief is a mistaken belief." Finally, the district court advised that "[e]vidence which establishes only that a person made a mistake of judgment or an error in management, or was careless, does not establish fraudulent intent."

These instructions adequately convey the defendant's message. "Puffing," enthusiasm, and even overzealous selling all fall under the umbrella of the good faith and honest intention instructions. The district court's failure to track the defendants' proposed language word-for-word does not constitute reversible error.

*CONCLUSION*

We reject each of Gay's and Porter's points on appeal. The judgments of conviction are

*AFFIRMED.*