**Jose Napolean SANTAMARIA, Petitioner–Appellee,**

v.

**Don HORSLEY, Sheriff, Respondent–Appellant.**

**No. 95–16991.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1996.

Submission Withdrawn Oct. 22, 1996.

Resubmitted Feb. 5, 1997.

Filed April 10, 1997.

---

Joan Killeen, Deputy Attorney General, San Francisco, CA, for respondent–appellant.

Lawrence A. Gibbs, Grossman & Gibbs, Berkeley, CA, for petitioner–appellee.

Traci Huahn, Criminal Justice Legal Foundation, Sacramento, CA, for amicus curiae.

Before: WALLACE, SNEED and RYMER, Circuit Judges.

WALLACE, Circuit Judge:

Sheriff Don Horsley of San Mateo County, California, appeals from the district court's order granting Jose Napolean Santamaria's petition for writ of habeas corpus. The district court had jurisdiction under 28 U.S.C. § 2254. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. §§ 1291 and 2253, and we affirm.

## I

In February 1989, a jury found Santamaria guilty of murder and robbery, but found "not true" a sentence enhancement charge, under California Penal Code § 12022(b), that he personally used a deadly weapon in the commission of a felony. *See People v. Santamaria,* 8 Cal.4th 903, 909, 35 Cal.Rptr.2d 624, 884 P.2d 81 (1994) (*Santamaria*). A state appellate court reversed the murder conviction, holding that an 11–day continuance during jury deliberations was prejudicial error. *Id.* at 909, 35 Cal.Rptr.2d 624, 884 P.2d 81, *citing People v. Santamaria,* 229 Cal.App.3d 269, 280 Cal.Rptr. 43 (1991).

On remand, Santamaria filed a motion to, among other things, "preclude prosecution's reliance on theory adjudicated in defendant's favor at first trial." *Id.* The trial court granted the motion, ruling that the collateral estoppel component of the Double Jeopardy Clause barred the prosecution "from retrying the defendant on the theory that he personally used the knife during the killing." *Id.* The prosecution subsequently stated that it was unable to proceed in light of the court's ruling, and the case was dismissed. The California Court of Appeal affirmed the trial court's dismissal of the case, but the California Supreme Court reversed. That court held "that collateral estoppel does not apply," *id.* at 922, 35 Cal.Rptr.2d 624, 884 P.2d 81, and remanded the case to the trial court with instructions to reinstate the charges.

Santamaria then filed this petition for writ of habeas corpus in the United States District Court for the Northern District of California. The district court held that our decision in *Pettaway v. Plummer,* 943 F.2d 1041 (9th Cir.1991) (*Pettaway*), *cert. denied,* 506 U.S. 904, 113 S.Ct. 296, 121 L.Ed.2d 220 (1992), compelled the conclusion that the Double Jeopardy Clause bars the prosecution from arguing at retrial that Santamaria used a knife to commit murder. Therefore, the district court issued the writ. The Sheriff, Santamaria, and the California Supreme Court all agree that this case is factually indistinguishable from *Pettaway,* and that the only substantial legal issue before us is the continuing vitality of that decision. *See Santamaria,* 8 Cal.4th at 923, 35 Cal.Rptr.2d 624, 884 P.2d 81 ("*People v. Pettaway* ... involved virtually the same issue and procedural posture as this case, except that there the weapon enhancement that the jury found not true was for use of a firearm, not a knife.").

## II

We review de novo a district court's decision to grant or deny a writ of habeas corpus. *Martinez–Villareal v. Lewis,* 80 F.3d 1301, 1305 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996). The habeas corpus provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (amendments to 28 U.S.C. §§ 2241–2255) do not apply retroactively to this appeal. *Jeffries v. Wood,* 103 F.3d 827 (9th Cir.1996).

The Sheriff urges us to revisit *Pettaway* for three reasons: (1) it was decided incorrectly as an original matter; (2) it rested upon an erroneous interpretation of California law since corrected by the California Supreme Court; and (3) it has been undermined by the Supreme Court's intervening decisions in *Caspari v. Bohlen,* 510 U.S. 383, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) (*Caspari*), and *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (*Dixon*). We will address each of the Sheriff's contentions in turn.

## A.

■ The Sheriff's first ground for urging us to overrule *Pettaway* cannot be accepted. It is settled law that one three-judge panel of this court cannot ordinarily reconsider or overrule the decision of a prior panel. *United States v. Gay*, 967 F.2d 322, 327 (9th Cir.) (*Gay*), *cert. denied*, 506 U.S. 929, 113 S.Ct. 359, 121 L.Ed.2d 272 (1992). This principle, that three-judge panels must respect binding circuit precedent, applies even if we believe that precedent to be erroneous. The Sheriff's various arguments that *Pettaway* misinterpreted *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), can be entertained only by this court sitting en banc.

## B.

■ The Sheriff's second ground for questioning *Pettaway* is more compelling, because no panel of this court can have ultimate authority over a question of California law. Our colleagues on the California Supreme Court recently informed us that *Pettaway* "misunderstood the relevant state law," and urged us to reconsider that decision at the earliest opportunity. *Santamaria*, 8 Cal.4th at 923–26, 35 Cal.Rptr.2d 624, 884 P.2d 81.

We held in *Pettaway* that a jury finding of "not true" on a California sentence-enhancement charge implicates the collateral estoppel component of the Double Jeopardy Clause, which the Supreme Court recognized in *Ashe*. *Pettaway*, 943 F.2d at 1047–48. If the defendant's conviction is subsequently reversed on appeal, that "not true" finding therefore bars the prosecution from relying at retrial on any theory of the offense factually inconsistent with it. In *Pettaway*, the jury found the defendant guilty of murder, but found "not true" two sentence enhancement charges that he had personally used a firearm and personally inflicted great bodily injury. The murder conviction was reversed on appeal, and at the retrial the prosecution proposed to introduce evidence tending to show that Pettaway personally shot the victim. We held that a retrial on that theory would be inconsistent with the first jury's "not true" findings, and would therefore violate the Double Jeopardy Clause. *Id.* at 1048.

■ The Sheriff and the California Supreme Court contend that *Pettaway* rested on the erroneous state-law assumption that the defendant could be convicted of murder only either (1) as a direct perpetrator, or (2) as an aider and abettor. California law apparently permits a third alternative.

> It is settled that as long as each juror is convinced beyond a reasonable doubt that defendant is guilty of murder as that offense is defined by statute, it need not decide unanimously by which theory he is guilty. More specifically, the jury need not decide unanimously whether defendant was guilty as the aider and abettor or as the direct perpetrator.

*Santamaria*, 8 Cal.4th at 918, 35 Cal.Rptr.2d 624, 884 P.2d 81 (citations omitted). Pettaway's first jury might, therefore, have concluded beyond a reasonable doubt that he was either an aider and abettor or the direct perpetrator, without definitely endorsing either theory. Its "not true" finding on the weapon enhancement charge might then simply reflect a reasonable doubt on the "direct perpetrator" theory.

Under this analysis, there would have been nothing inconsistent about retrying Pettaway under the "either/or" theory. "The first jury convicted the defendant of murder, finding that he was either the direct perpetrator or the aider and abettor. If the second jury does the same, the verdicts would be consistent, not inconsistent." *Id.* at 924, 35 Cal. Rptr.2d 624, 884 P.2d 81. Evidence tending to show that Pettaway personally used a gun would also have been admissible at retrial to prove that he was "either a direct and active perpetrator or the aider and abettor," although it would not have been admissible to prove *solely* that he was the direct perpetrator. *See id.* at 932–33, 35 Cal.Rptr.2d 624, 884 P.2d 81 (Mosk, J., concurring and dissenting).

■ This case presents the same issue. Santamaria's first jury may have found beyond a reasonable doubt that he was either a direct perpetrator or an aider and abettor, but harbored a reasonable doubt that he was

a direct perpetrator. Collateral estoppel obviously prevents the State from seeking the "deadly weapon" sentence enhancement again at retrial. But, the Sheriff argues, a conviction at retrial under the "either/or" theory would not be logically inconsistent with the first jury's "not true" enhancement finding, even if evidence is presented which tends to suggest that Santamaria personally used a knife.

We understand the Sheriff's argument, but fidelity to our precedent requires us to reject it. The Sheriff's contention that *Pettaway* "overlooked" the "either/or" theory of murder under state law is inaccurate. The view now urged by the Sheriff was not "overlooked"; the district court in *Pettaway* relied upon it to deny the writ, and we discussed it in our opinion. *Pettaway*, 943 F.2d at 1044. We held in *Pettaway* that this rationale "assumes that collateral estoppel does not apply unless the issue previously determined was necessary to the question of guilt or innocence." *Id.* We then explained at length why the jury's factual finding on the weapon enhancement charge was entitled to preclusive effect even though it "was not formally necessary for a finding of guilt on the murder charge." *Id.*

> The jury was instructed that it had the duty to determine whether the state had proven beyond a reasonable doubt that Pettaway fired the handgun. Thus, the issue of use was tried to the jury in a proceeding with all the "hallmarks of a trial on guilt or innocence," and was "necessarily determined" for the purposes of collateral estoppel.

*Id.* at 1045 (footnote omitted).

That may be a less than satisfactory response, because the Sheriff had also argued that, even if the factual finding is preclusive, a subsequent conviction under the "either/or" theory could be consistent with it. Our opinion in *Pettaway* does not contain a fully persuasive response to that point. The opinion does make it clear, however, that we were aware of the complex state law problem which the Sheriff now urges us to consider. *See id.* at 1044 (quoting the district court's description of the "either/or" theory).

██ Pettaway may have given insufficient attention to this complex problem. Or, it may have rejected the technical, legalistic conception of "inconsistency" now urged by the Sheriff. Regardless, any error in *Pettaway*'s final holding was an error of federal law. We do not agree that state law is "the proper source for determining the meaning of the jury's verdicts and whether the issues are identical." *Santamaria*, 8 Cal.4th at 917, 35 Cal.Rptr.2d 624, 884 P.2d 81. The Supreme Court reaffirmed recently that "[t]he preclusive effect of the jury's verdict ... is a question of federal law which we must review de novo." *Schiro v. Farley*, 510 U.S. 222, 232, 114 S.Ct. 783, 790–91, 127 L.Ed.2d 47 (1994). *Pettaway* considered these arguments, and concluded as a matter of federal law that the use at retrial of evidence tending to show that Pettaway used a gun would "violate double jeopardy principles." *Pettaway*, 943 F.2d at 1048. Right or wrong, we are bound by that conclusion. The arguments of the Sheriff, and our concurring colleague, must be addressed to this court sitting en banc.

### C.

██ A three-judge panel can revisit prior Ninth Circuit precedent on a federal issue when "an intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point." *Gay*, 967 F.2d at 327, *quoting United States v. Lancellotti*, 761 F.2d 1363, 1366 (9th Cir.1985). The Sheriff argues that *Pettaway* has been substantially undermined by the Supreme Court's intervening decisions in *Caspari* and *Dixon*.

*Dixon* dealt with when a successive prosecution is for the "same offense" as an earlier prosecution, and thus barred by the claim-preclusion aspect of the Double Jeopardy Clause. Under *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), offenses were considered different for Double Jeopardy purposes as long as each "require[d] proof of an additional fact which the other d[id] not." *Id.* at 304, 52 S.Ct. at 182. In *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), the Supreme Court departed from *Blockbur-*

*ger* and held that offenses would also be considered the same "if, to establish an essential element of [the new offense], the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Id.* at 510, 110 S.Ct. at 2087.

*Pettaway* recognized that "[t]he present case presents essentially the same situation" as *Grady,* and quoted extensively from that opinion. *Pettaway,* 943 F.2d at 1046–47. That is hardly surprising; by adopting a more fact-driven approach to the meaning of "same offense," *Grady* blurred the line between the former claim preclusion (*Blockburger*) and issue preclusion (*Ashe*) aspects of the Court's Double Jeopardy jurisprudence.

■ In *Dixon,* the Supreme Court overruled *Grady* and returned to the *Blockburger* test for claim preclusion. Nonetheless, the demise of *Grady* in the "same offense" context does not undermine *Pettaway*'s conclusions in the very different context of issue preclusion. *Dixon* recognized that *Ashe* may sometimes bar prosecutions when *Blockburger* would not. "The collateral-estoppel effect attributed to the Double Jeopardy Clause may bar a later prosecution for a separate offense where the Government has *lost* an earlier prosecution involving the same facts." *Dixon,* 509 U.S. at 705, 113 S.Ct. at 2860 (citation omitted). The Court also pointed out that "[o]f course the collateral-estoppel issue is not raised in this case." *Id. Dixon* is not closely on point with *Pettaway.*

*Caspari* held only that an extension of *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981) (*Bullington*), beyond the context of capital sentencing would be a "new rule" for purposes of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *Caspari,* 510 U.S. at 396–97, 114 S.Ct. at 956–57. *Bullington*'s core holding was that when the death penalty phase of a capital trial bears "the hallmarks of the trial on guilt or innocence," the Double Jeopardy Clause bars retrial of that proceeding if the state fails to obtain a death sentence. *Bullington,* 451 U.S. at 439, 101 S.Ct. at 1858. *Pettaway* cited the "hallmarks" language above, as well as numerous other sources, in its discussion of whether the criti-

cal issue was "necessarily decided" in Pettaway's first trial. *Pettaway,* 943 F.2d at 1044. *Bullington*'s vitality in non-capital cases is not critical to *Pettaway;* in any event, *Caspari* did not decide that issue on the merits.

The Supreme Court carefully limited the holdings of both *Dixon* and *Caspari. Dixon* did not decide any collateral estoppel issues, and *Caspari* held only that *Bullington* cannot be extended on collateral review because of the non-retroactivity principle of *Teague.* Neither of these cases are closely on point with *Pettaway,* and neither "undermine" that decision enough for this panel to overrule it. Our reliance on *Pettaway* in several recent decisions, without indicating any doubt as to its continuing vitality, strengthens this conclusion. *See United States v. McLaurin,* 57 F.3d 823, 826–27 (9th Cir.1995); *United States v. Weems,* 49 F.3d 528, 531–32 (9th Cir.1995).

We conclude that we are bound by the collateral estoppel analysis of *Pettaway.* It was therefore not error for the district court to issue the writ of habeas corpus.

AFFIRMED.

SNEED, Circuit Judge, Concurring Separately:

I agree with the majority that this court's opinion in *Pettaway v. Plummer,* 943 F.2d 1041 (9th Cir.1991), requires this panel to affirm the district court's grant of Santamaria's habeas corpus petition. I write separately to explain why I believe that *Pettaway* was wrongly decided, and why this court should rehear this case en banc to overrule *Pettaway.*

## I.

### SANTAMARIA'S TRIAL

To appreciate fully the issues involved, it is necessary to review the evidence presented to the jury that convicted Santamaria of murder.

On September 5, 1985, the body of Victor Guadron was discovered in Moss Beach. Evidence indicated the body had been stabbed.... [Santamaria] was charged with Guadron's murder.... The main

prosecution witness was Anthony Nubla, who had pleaded guilty to being an accessory to the murder and agreed to cooperate with the prosecution. Nubla testified that in the morning of September 5, at [Santamaria's] request, [Nubla] gave [Santamaria] and Guadron a ride. After running an errand, they drove to Dolores Park, where Nubla got out to buy marijuana. He heard someone yell "Help," turned around, and saw [Santamaria] hugging Guadron's neck and stabbing him.

*People v. Santamaria*, 8 Cal.4th 903, 908–09, 35 Cal.Rptr.2d 624, 884 P.2d 81 (1994).

The jury convicted Santamaria of murder, but found not true a sentence enhancement charge that he personally used a knife during commission of the crime. *Id.* at 909, 35 Cal.Rptr.2d 624, 884 P.2d 81. Santamaria never confessed to the crime, and Nubla was the only witness who testified that he saw Santamaria stab Guadron. *Id.* Apart from Nubla's testimony, the only other evidence linking Santamaria to Guadron's murder was some jewelry that had been stolen from Guadron and that Nubla and Santamaria together delivered to a pawn shop. *Id.*

In light of the above, the jury's dual findings—guilty of murder, but not true that Santamaria personally used a knife—initially appear inconsistent. However, there is no real inconsistency. Nubla, who plead guilty to being an accessory and cooperated with the prosecution, had a strong incentive to present his testimony in a fashion that pinned most of the blame on Santamaria, and downplayed his own culpability. Recognizing Nubla's mixed motives, the jury may well have harbored a reasonable doubt as to who actually stabbed Guadron—perhaps Nubla, not Santamaria, was the actual stabber.[1] Such a reasonable doubt would explain the jury's not true finding on the personal knife use allegation.[2]

At the same time, the jury quite consistently may have been persuaded, beyond a reasonable doubt, that Santamaria participated actively in the murder. Under California law, the prosecution can obtain a murder conviction by proving beyond a reasonable doubt either: (A) that the defendant was the direct perpetrator (the "direct perpetrator" theory); or (B) that the defendant was an aider and abettor (the "aider and abettor" theory); or (C) that the defendant was either a perpetrator or an aider and abettor (the "either/or" theory). *Id.* at 918–21, 35 Cal. Rptr.2d 624, 884 P.2d 81.[3] "As long as each

---

1. The California Supreme Court put it this way:

Defendant ... argues that the jury did reach a unanimous verdict; it unanimously found the knife-use allegation not true. This is correct, but is of far less significance than defendant contends. It shows only that there was a reasonable doubt in the minds of the jurors that defendant specifically used a knife. It does not show the reverse, that the jury specifically found defendant was an aider and abettor. Indeed, under the facts of this case, such a finding is most unlikely. The jury may merely have believed, and most likely did believe, that defendant was guilty of murder as either a personal knife user or an aider and abettor but it may have been uncertain exactly which role defendant played. That, too, would fully explain, and necessitate, the split verdict.

Not only is there no unanimity requirement as to the theory of guilt, the individual jurors themselves need not choose among the theories, so long as each is convinced of guilt. Sometimes, as probably occurred here, the jury simply cannot decide beyond a reasonable doubt exactly who did what. There may be a reasonable doubt that the defendant was the direct perpetrator, and a similar doubt that he was the aider and abettor, but no such doubt that he was one or the other.

*Santamaria*, 8 Cal.4th at 919, 35 Cal.Rptr.2d 624, 884 P.2d 81.

2. Under California Penal Code Section 12022, a defendant's sentence may be enhanced only if the jury finds *beyond a reasonable doubt* that the defendant personally used a weapon. *Santamaria*, 8 Cal.4th at 918, 35 Cal.Rptr.2d 624, 884 P.2d 81.

3. The California Supreme Court stated the following:

[T]he jury here may not have been able to decide beyond a reasonable doubt whether defendant or Nubla actually wielded the knife, but was convinced beyond a reasonable doubt that, either way, defendant was guilty of Guadron's murder. To go further and conclude that the jury specifically found defendant did not use the knife would not apply the collateral estoppel rule with "realism and rationality."

This shows that the issue necessarily decided by the knife-use verdict and the issue sought to be precluded in the murder prosecution are not identical, but quite different. Although defendant claims he merely seeks to preclude the theory that he used the knife, he necessarily is claiming more; he seeks to preclude the theory,

juror is convinced beyond a reasonable doubt that defendant is guilty of murder ... the jury need not decide unanimously whether defendant was guilty as the aider and abettor or as the direct perpetrator." *Id.* at 918, 35 Cal.Rptr.2d 624, 884 P.2d 81. Thus, if the jury was convinced that Nubla and Santamaria together murdered Guadron, but the jury harbored a reasonable doubt as to who actually stabbed Guadron, it would be entirely appropriate for the jury to decide, as it did: (1) that Santamaria was guilty of murder; and (2) that the prosecutor failed to prove the personal knife use allegation beyond a reasonable doubt.

## II.

### HOW THIS CASE SHOULD BE ANALYZED ABSENT PETTAWAY

I begin my analysis with *Ashe v. Swenson.* There the Supreme Court held that collateral estoppel is "a part of the Fifth Amendment's guarantee against double jeopardy." 397 U.S. 436, 442, 90 S.Ct. 1189, 1193–94, 25 L.Ed.2d 469 (1970). The Court defined collateral estoppel as follows: "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe,* 397 U.S. at 443, 90 S.Ct. at 1194. The party seeking to preclude relitigation of an issue bears the burden of proving "that the issue whose relitigation he seeks to foreclose was actually decided in his favor" in the first proceeding. *Schiro v. Farley,* 510 U.S. 222, 236, 114 S.Ct. 783, 792, 127 L.Ed.2d 47 (1994) (quoting

*Dowling v. United States,* 493 U.S. 342, 350, 110 S.Ct. 668, 673, 107 L.Ed.2d 708 (1990)) (internal quotations omitted).

In the present case, the petitioner contends that there are two distinct issues that the prosecution is collaterally estopped from litigating at retrial. First, the prosecution is precluded from arguing at retrial that Santamaria personally stabbed Guadron (the direct perpetrator theory). I agree. By rendering a not true finding on the sentence enhancement allegation, the jury at the initial trial "actually decided," *Schiro,* 510 U.S. at 236, 114 S.Ct. at 792, that the prosecution failed to prove Santamaria's personal use of the knife *beyond a reasonable doubt.* "Having received one fair opportunity to offer whatever proof it could assemble, the State is not entitled to another." *Bullington v. Missouri,* 451 U.S. 430, 446, 101 S.Ct. 1852, 1862, 68 L.Ed.2d 270 (1981) (citations omitted).

Second, petitioner also contends that the prosecution is collaterally estopped from litigating the either/or theory at retrial. I disagree. Although petitioner acknowledges that collateral estoppel does not bar the prosecution from attempting to prove at retrial that Santamaria was an aider and abettor,[4] he contends that the prosecution is barred from attempting to prove that Santamaria was either the direct perpetrator *or* the aider and abettor. To prevail on this claim, petitioner must prove that the jury at the initial trial "actually decided" the either/or theory in his favor. *Schiro,* 510 U.S. at 233–36, 114 S.Ct. at 791–92. In other words, petitioner must prove: (a) that the prosecutor at the first trial presented the either/or theory to

---

and evidence to support the theory, that he either used the knife or aided and abetted the one who did. This, however, is not the issue decided regarding the enhancement allegation. Whether defendant specifically used a knife is one question; we may assume the prosecution did not prove that beyond a reasonable doubt, which explains the not true enhancement verdict. Whether defendant committed murder by either using a knife or aiding and abetting the one who did is quite a different question; the prosecution did prove that to the jury's satisfaction.

It is theoretically possible the jury concluded defendant was specifically the aider and abettor, despite the paucity of supporting evidence. But that is not the test. Setting the inquiry "in a practical frame" and viewing it "with an eye to

all the circumstances of the proceedings," we conclude the jury did not "necessarily decide" that defendant was the aider and abettor, only that it had doubts as to his exact role. Defendant has the burden of showing that the issue he seeks to foreclose was actually decided by the jury. This he cannot do.

*Santamaria,* 8 Cal.4th at 920–21, 35 Cal.Rptr.2d 624, 884 P.2d 81 (citations omitted).

4. The prosecution has stated that it is unable to proceed on an aider and abettor theory at retrial. To prove that Santamaria was an aider and abettor, the prosecution would have to prove that Nubla was the direct perpetrator, and the prosecution lacks evidence to support such a charge.

the jury; (b) the jury considered the theory; and (c) the jury expressly rejected the theory.

Petitioner cannot sustain this argument. The jury found Santamaria guilty of murder. Under California law, the guilty verdict means that the jury was persuaded beyond a reasonable doubt that Santamaria was either: (a) the direct perpetrator, or (b) an aider and abettor, or (c) either the direct perpetrator or an aider and abettor. *See Santamaria,* 8 Cal.4th at 918–21, 35 Cal.Rptr.2d 624, 884 P.2d 81. The jury cannot have relied on the direct perpetrator theory because that would be inconsistent with its not true finding on the personal knife use allegation. It follows that, to support its verdict, the jury must have relied either on the aider and abettor theory, or the either/or theory.

Petitioner, however, argues that the jury must have relied on the aider *and* abettor theory, and rejected the either/or theory, because that theory is inconsistent with the not true finding on the personal knife use charge. This argument is false. There is no inconsistency between the either/or theory and the not true finding. The jury could have harbored a reasonable doubt as to who actually stabbed Guadron, but been persuaded beyond a reasonable doubt that: (a) Nubla and Santamaria together murdered Guadron, and (b) either Nubla or Santamaria was the actual stabber. Indeed, the California Supreme Court concluded that this is the most plausible explanation for the jury's actions. *Santamaria,* 8 Cal.4th at 919, 35 Cal. Rptr.2d 624, 884 P.2d 81.

Aside from arguing the alleged inconsistency between the not true finding and the either/or theory, petitioner has failed to demonstrate that the jury expressly rejected the either/or theory. Thus, petitioner has failed to bear his burden of proving that the either/or theory "has once been determined by a valid and final judgment" in his favor. *Ashe,* 397 U.S. at 443, 90 S.Ct. at 1194. Were it not for *Pettaway,* I would hold that the prosecution is not collaterally estopped from arguing the either/or theory at Santamaria's retrial.

## III.

### *THE PETTAWAY CASE*

My argument that *Pettaway* was wrongly decided commences with the California Supreme Court statement that this court's opinion "misunderstood the relevant state law." *Santamaria,* 8 Cal.4th at 923, 35 Cal.Rptr.2d 624, 884 P.2d 81. Accordingly, the California Supreme Court urged this court to reconsider its decision. *Id.* at 925, 35 Cal.Rptr.2d 624, 884 P.2d 81. I submit that the California Supreme Court was correct in its assessment of *Pettaway.*

In *Pettaway,* like *Santamaria,* the jury convicted the defendant of murder, but found "not true" a sentence enhancement charge that he personally used a deadly weapon (in his case a gun) to commit the murder. *Pettaway,* 943 F.2d at 1043. The California Court of Appeal in *Pettaway* reversed the murder conviction, due to a flaw in the jury instructions. *Id.* On remand, Pettaway argued that collateral estoppel precluded the prosecution from advancing a theory that he personally fired the murder weapon (the direct perpetrator theory). *Id.* The trial court agreed, but the California Court of Appeal reversed. *People v. Pettaway,* 206 Cal.App.3d 1312, 254 Cal.Rptr. 436 (1 Dist. 1988). The California Supreme Court denied review. *Pettaway,* 943 F.2d at 1043. Pettaway then filed a petition for a writ of habeas corpus in federal district court. The district court denied Pettaway's petition, and we reversed. *Id.*

We stated our holding as follows:

[W]e hold that it would violate double jeopardy principles if, on retrial of the second offense, the prosecution attempted to prove that Pettaway did personally use the gun. . . . Of course, the prosecution could still seek to prove Pettaway guilty of first degree murder under an aiding and abetting theory, but, as we have pointed out, the prosecutor expressly eschews any intention to do so.

*Id.* at 1048. In other words, we held that collateral estoppel bars retrial on a direct perpetrator theory, but does not bar retrial on an aider and abettor theory. Our holding, however, was silent as to whether collateral

estoppel bars retrial on an either/or theory. Therefore, the *Pettaway* court erred by granting Pettaway's habeas petition without deciding whether the prosecution was collaterally estopped from arguing an either/or theory at retrial.

Judge Wallace, in describing the *Pettaway* opinion, states: (1) that the district court relied on the either/or theory in denying Pettaway's habeas petition; and (2) that in *Pettaway* there was discussion of the either/or theory. *See op.* at 1355 (citing *Pettaway*, 943 F.2d at 1044). Nonetheless, the *Pettaway* court reversed the district court's order, and remanded with instructions to issue the writ of habeas corpus. *Pettaway*, 943 F.2d at 1048. Therefore, it is possible to infer that the *Pettaway* court decided that the prosecution *was* collaterally estopped from arguing an either/or theory at retrial. Such an inference, however, is an incorrect application of collateral estoppel.

The district court in *Pettaway* stated its holding as follows: "[I]t is clear to the court that the sentence enhancement findings should not invoke collateral estoppel and prevent Petitioner from being retried on the theory that he personally shot Ms. Taylor." That is, the district court held that the prosecution was not collaterally estopped from arguing a *direct perpetrator theory* at retrial. That holding was erroneous. By reversing the district court, this court held only that the prosecution was collaterally estopped from arguing a direct perpetrator theory at retrial. That holding was correct. However, *Pettaway* did not hold, and it would be erroneous for us to hold, that the prosecution is collaterally estopped from arguing an *either/or theory* at retrial.

Apart from the single paragraph in which *Pettaway* quoted the relevant language from the district court opinion, *id.* at 1044, its analysis reflects no proper recognition that the either/or theory constitutes a third possible ground for convicting a defendant of murder under California law. The entire analysis appears premised on an unstated assumption that there are only two possible theories (a direct perpetrator theory or an aider and abettor theory) that can support a murder conviction under California law.

Thus, the California Supreme Court was correct when it stated that *Pettaway* "misunderstood the relevant state law." *Santamaria*, 8 Cal.4th at 923, 35 Cal.Rptr.2d 624, 884 P.2d 81.

The *Pettaway* court's "misunderstanding" is evident in the manner in which it characterized Pettaway's petition: "The basis for Pettaway's petition is that his reprosecution on the theory that he shot Taylor is barred" by collateral estoppel. *Pettaway*, 943 F.2d at 1043. This statement suggests that the court understood Pettaway's petition to present a single claim: that the prosecution was collaterally estopped from arguing a direct perpetrator theory at retrial. If so, it failed to recognize that Pettaway's petition also presented an additional claim: that the prosecution was collaterally estopped from arguing an either/or theory at retrial.

Moreover, in the very next sentence, the probability of this failure is strengthened. The court said: "To resolve this claim, we must first determine whether the jury's finding that Pettaway did not personally shoot Taylor has collateral estoppel effect." *Id.* In framing the collateral estoppel issue in this manner, the *Pettaway* court ignored another possibility. The not true finding on the personal weapon use allegation, properly understood, means only that the prosecution failed to prove *beyond a reasonable doubt* that Pettaway personally shot Taylor. The jury, however, might well have believed that it was *more likely than not* that Pettaway did shoot Taylor. All that is known for certain is that the prosecution failed to prove *beyond a reasonable doubt* that Pettaway personally shot Taylor.

The *Pettaway* court's conclusion, to repeat, flows naturally from its erroneous assumption that the only *two* possibilities for sustaining a murder conviction were the direct perpetrator theory and the aider and abettor theory. Under that assumption, Pettaway's murder conviction must rest on the aider and abettor theory. From that it follows that the jury found that "Pettaway did not personally shoot Taylor," inasmuch as an aider and abettor cannot also be a perpetrator. Thus, to repeat, the language the *Pettaway* court used to describe the jury's finding strongly

suggests that the *Pettaway* court failed to recognize properly that the either/or theory is a third possibility under California law.

Having both misstated the nature of Pettaway's claim, and misinterpreted the meaning of the jury's not true finding, the next paragraph of the *Pettaway* opinion states:

Collateral estoppel involves a three-step process: (1) An identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine; (2) an examination of the record of the prior case to decide whether the issue was "litigated" in the first case; and (3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case.

*Id.* at 1043–44 (quoting *United States v. Hernandez*, 572 F.2d 218, 220 (9th Cir.1978)). The court then skipped over step one without any discussion, and proceeded immediately to step two, concluding that "the question whether Pettaway fired the gun himself was actually litigated at the first trial." *Id.* at 1044. By skipping step one, and stating its conclusion with respect to step two in terms of the direct perpetrator theory ("whether Pettaway fired the gun himself"), the court again indicated that the only issue to be decided was whether collateral estoppel precluded the prosecution from relitigating the direct perpetrator theory at retrial. Again the court failed to consider whether the either/or theory had been litigated at the first trial, or whether the prosecution was barred from litigating that theory at the second trial.

The *Pettaway* court, confronted with a conviction for murder and a not true finding on the personal use allegation, harmonized the two by stating: "[T]here is a rational explanation that takes into account the whole of the jury's verdict.... [Pettaway] could be guilty of first degree murder as long as he aided and abetted the murderer." *Id.* at 1046. Once more the court failed to consider the possibility that Pettaway could be guilty of murder under an either/or theory.

Nothing in the remainder of the opinion undermines this conclusion. The *Pettaway* court "misunderstood the relevant state law,"

*Santamaria*, 8 Cal.4th at 923, 35 Cal.Rptr.2d 624, 884 P.2d 81, not in the sense that its holding was contrary to California law, but in the sense that it granted the habeas petition without deciding whether collateral estoppel barred retrial on an either/or theory. The *Pettaway* court's failure to decide that issue was based on its failure to recognize that, under California law, a defendant can be convicted of murder on an either/or theory, even though "[t]here may be a reasonable doubt that the defendant was the direct perpetrator, and a similar doubt that he was the aider and abettor, but no such doubt that he was one or the other." *Id.* at 919, 35 Cal.Rptr.2d 624, 884 P.2d 81.

## IV.

### SCOPE OF COLLATERAL ESTOPPEL

*Pettaway* should have held that collateral estoppel bars relitigation of a direct perpetrator theory, but does not bar the prosecution from arguing an either/or theory at retrial. Collateral estoppel should not preclude the prosecution from litigating an either/or theory at retrial, because a conviction under that theory would be consistent with the first jury's not true finding on the sentence enhancement charge. Judge Wallace is correct when he points out that "[o]ur opinion in *Pettaway* does not contain a fully persuasive response" to this argument. *Majority op.* at 1356. *There is no logical inconsistency* between: (1) the first jury's finding that the prosecution failed to prove personal weapon use beyond a reasonable doubt; and (2) a potential finding by a subsequent jury that the prosecution succeeded in proving beyond a reasonable doubt that the defendant was either a direct perpetrator or an aider and abettor.

Judge Wallace points out that *Pettaway* "may have rejected [a] technical, legalistic conception of 'inconsistency.'" *Majority op.* at 1356. In other words, Pettaway may have decided, as a matter of federal law, that two jury findings could be "inconsistent" for purposes of collateral estoppel doctrine, even when there was no *logical* inconsistency between them.

Such an interpretation of collateral estoppel is at odds with *Ashe*. There, the Court defined collateral estoppel to mean "that when an issue of ultimate fact has once been determined by a valid and final judgment, *that issue* cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443, 90 S.Ct. at 1194 (emphasis added). The Court did not say that a *closely related* issue cannot be litigated in a future lawsuit. To bar the litigation of a closely related issue, the resolution of which involves no logical inconsistency with an earlier verdict, would effectively expand the *Ashe* collateral estoppel doctrine. To grant Santamaria's habeas petition would expand *Ashe*, without offering any guidance as to its limits. How "closely related" is "close enough" is an issue not likely to promote certainty in the law.

To repeat, the "not true" finding on the personal knife use charge shows only that the prosecution at the initial trial failed to prove beyond a reasonable doubt that Santamaria personally wielded the murder weapon. There was no finding that the prosecution failed to prove beyond a reasonable doubt that Santamaria was either a direct perpetrator or an aider and abettor. The latter is not the same issue as that resolved by the "not true" finding. Until today, no federal appellate court has interpreted the *Ashe* collateral estoppel doctrine to mean that a jury decision on the first issue bars a subsequent jury from considering the second issue.

## V.

### CONCLUSION

We should rehear this case en banc to consider whether *Pettaway* should be overruled. But for *Pettaway*, the habeas corpus petition before us should be denied.