**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DANIEL WAYNE COOK,
 *Plaintiff-Appellant,*

v.

JANICE K. BREWER; CHARLES L.
RYAN; ERNEST TRUJILLO; CARSON
MCWILLIAMS; DOES 1-50,
 *Defendants-Appellees.*

No. 11-15303

D.C. No.
2:10-cv-02454-RCB

OPINION

Appeal from the United States District Court
for the District of Arizona
Robert C. Broomfield, Senior District Judge, Presiding

Argued and Submitted
March 10, 2011—Portland, Oregon

Filed March 16, 2011

Before: Diarmuid F. O'Scannlain, Susan P. Graber, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

**COUNSEL**

Jon M. Sands, Federal Public Defender, Dale A. Baich (argued), Robin C. Konrad, Golnoosh Farzaneh, Assistant Federal Public Defenders, Phoenix, Arizona, for the plaintiff-appellant.

Thomas C. Horne, Attorney General, Kent E. Cattani (argued), Chief Counsel, Capital Litigation Section, Phoenix, Arizona, for the defendants-appellees.

---

**OPINION**

CALLAHAN, Circuit Judge:

Plaintiff Daniel Wayne Cook ("Cook"), an Arizona prisoner scheduled for execution on April 5, 2011, filed this action for equitable, injunctive and declaratory relief under 42 U.S.C. § 1983 ("§ 1983") against Janice Brewer, Governor of Arizona, as well as Charles Ryan, Ernest Trujillo, and Carson McWilliams, who are Arizona Department of Corrections ("ADC") officials (collectively, "Defendants"). The district court granted Defendants' motion to dismiss for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). On appeal, Cook challenges the district court's decisions regarding two of his Eighth Amendment claims.[1] First, he argues that Defendants' intent to use a foreign manufactured non-Food and Drug Administration ("FDA") approved substance (which Defendants state is sodium thiopental) in his execution creates a substantial and unnecessary risk of unconstitutional pain. Second, Cook contends that the administration of this substance by medical professionals would constitute deliberate indifference to his right to be free from cruel and unusual punishment. We affirm.

---

[1]Cook raised a third claim in his Complaint, that the State's failure to provide him with notice and information regarding the sodium thiopental that will be used in his execution violates his Fourteenth Amendment rights, but he does not challenge the district court's decision on that claim in this appeal.

# I

Cook is scheduled for execution on April 5, 2011, for his role in two 1987 murders in Lake Havasu City, Arizona. *State v. Cook*, 821 P.2d 731, 738 (Ariz. 1991). Cook and his roommate tortured, sodomized and killed Carlos Cruz Ramos and Kevin Swaney. *Id.* at 736-37. A jury thereafter convicted him of two counts of first-degree murder and the court sentenced him to death under Arizona Revised Statutes §§ 13-503 and 13-703. *Id.* at 737-38.

After the Arizona courts denied appellate and post-conviction relief, Cook filed a petition for writ of habeas corpus, which the district court denied and we thereafter affirmed. *Cook v. Schriro*, 538 F.3d 1000 (9th Cir. 2008), *cert. denied* 129 S. Ct. 1033 (2009). On November 10, 2010, after the State sought a warrant of execution, Cook filed this § 1983 action in which he raised several claims related to the State's use of sodium thiopental, one of three drugs used as part of execution by lethal injection. The district court subsequently granted Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted. Cook then timely filed this appeal.

# II

We review de novo a district court's order granting a motion to dismiss under Rule 12(b)(6). *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). A pleading must include a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

**[1]** "A Rule 12(b)(6) motion tests the legal sufficiency of a claim. A claim may be dismissed only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**[2]** For a capital prisoner to establish an Eighth Amendment claim for exposure to future harm of severe pain constituting cruel and unusual punishment from an execution method, he is required to show that "the conditions presenting the risk must be '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.' " *Baze v. Rees*, 553 U.S. 35, 50 (2008) (Roberts, C.J., plurality opinion) (quoting *Helling v. McKinney*, 509 U.S. 25, 33, 34-35 (1993).[2] In *Baze*, the Court explained

---

[2]Neither party disputes that the *"sure or very likely"* and "substantial risk of serious harm" standard articulated by the plurality opinion in *Baze* is the proper standard here. 553 U.S. at 50. Notably, in *Dickens v. Brewer*, 631 F.3d 1139 (9th Cir. 2011) we affirmed that, like every other circuit court to consider the issue, "the *Baze* plurality's substantial risk standard is the controlling standard for assessing the constitutionality of an execution protocol." *Id.* at 1144-46; citing *Brewer v. Landrigan*, 131 S. Ct. 445 (2010) (holding that an Arizona execution could proceed because there was no evidence that the drug was " 'sure or very likely to cause serious illness and needless suffering' " (quoting *Baze*, 553 U.S. at 50) (emphasis omitted)); *Raby v. Livingston*, 600 F.3d 552, 557 (5th Cir. 2010); *Nooner*

that "to prevail on such a claim there must be a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.' " *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 842, 846 & n.9 (1994)).

## III

Because Cook committed his crimes before November 23, 1992, he has the choice to be executed by either lethal injection or lethal gas. *See* Ariz. Rev. Stat. § 13-757(B). Cook has not yet chosen a method of execution, and if he does not make a choice, the ADC must use lethal injection to execute him. *Id.*

Arizona's protocol for execution by lethal injection requires the sequential administration of sodium thiopental, pancuronium bromide, and potassium chloride. *Dickens*, 631 F.3d at 1142.

> Sodium thiopental is a fast-acting barbiturate that anesthetizes the inmate and permits the other chemicals to be administered without causing pain. Pancuronium bromide is a paralytic neuromuscular blocking agent that causes complete paralyzation and suffocation. Potassium chloride induces cardiac arrest. It is uncontested on this record that, if an inmate is not properly anesthetized by the sodium thiopental at the start of the execution, he will experience significant pain and suffering from the admin-

*v. Norris*, 594 F.3d 592, 598-99 (8th Cir. 2010); *Jackson v. Danberg*, 594 F.3d 210, 219-22 (3d Cir. 2010); *Cooey v. Strickland*, 589 F.3d 210, 220 (6th Cir. 2009); *Clemons v. Crawford*, 585 F.3d 1119, 1125-26 (8th Cir. 2009); *Harbison v. Little*, 571 F.3d 531, 535 (6th Cir. 2009); *Emmett v. Johnson*, 532 F.3d 291, 298 (4th Cir. 2008).

istration of the pancuronium bromide and potassium chloride. If the sodium thiopental is administered properly, however, there is no risk of pain during the execution.

*Id.*

Underlying Cook's claims is the fact that Arizona has obtained sodium thiopental from a foreign source, rather than from the United States. In his reply brief, Cook summarizes the five allegations raised in his Complaint, which he asserts we must take as true. First, he alleges that the ADC "lacks the appropriate safeguards to ensure the imported substance it obtained is not contaminated, is viable, and is actually sodium thiopental." Second, "the substance was obtained in violation of federal law." Third, "a foreign-manufactured drug was produced in an environment such that the drug may not be effective, and that the drug could be contaminated or compromised." Fourth, "drugs from foreign countries do not have the same assurance of safety as drugs actually regulated by the FDA, due to the risk that counterfeit or unapproved drugs will be sent to consumers and also because without regulation of repackaging, storage conditions, and many other factors, drugs delivered to the American public from foreign countries may be very different from FDA approved drugs with respect to formulation, potency, quality, and labeling" (quoting *Iverson v. Pfizer, Inc.* (*In re Canadian Import Antitrust Litig.*), 470 F.3d 785, 789 (8th Cir. 2006) (internal citations omitted)). Fifth, "this substance will cause Cook to suffer pain if the drug is contaminated, compromised, or substandard, which in turn will cause excruciating pain when the next two drugs are administered."

Cook contends that the district court erred in granting Defendants' motion to dismiss for two reasons. First, he argues that the foreign manufactured non-FDA approved sodium thiopental may be "contaminated, compromised, or otherwise ineffective, such that it will not properly anesthetize

him" or "might not actually be sodium thiopental at all" and that "using an unapproved substance from an unknown manufacturer in an execution gives rise to a substantial risk of unconstitutional pain" in violation of the Eighth Amendment. Second, Cook contends that the administration of "an unapproved substance from an unknown manufacturer in an execution by medical professionals constitutes deliberate indifference" to his right to be free from cruel and unusual punishment in violation of the Eighth Amendment.

## IV

At issue for both of these claims is whether Cook has sufficiently satisfied, to survive a motion to dismiss, Rule 8(a)'s pleading requirements to state facially plausible claims that the drug the ADC has obtained is "*sure or very likely* to cause serious illness and needless suffering" in violation of his Eighth Amendment right to be free from cruel and unusual punishment. *See Baze*, 553 U.S. at 50; *see also Iqbal*, 129 S. Ct. at 1949 (pleading standard). We conclude that Cook's allegations fail to meet this standard.

While the pleading standard for Rule 8(a) is liberal, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In *Iqbal*, the Court noted that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).

[3] Cook's allegations that foreign manufactured non-FDA approved drugs "may not be effective," "could be contaminated or compromised," and "may be very different from FDA approved drugs with respect to formulation, potency, quality, and labeling" are all speculative and overly generalized claims applicable to every drug produced outside the United States. Cook does not make any specific allegations about the manufacturing process, formulation, potency, qual-

ity, or labeling of the drug at issue here. Cook also fails to allege any facts to support his claim that the drug might not actually be sodium thiopental or that it could be contaminated, compromised, or otherwise substandard such that it may not effectively anesthetize him and cause him unconstitutional pain when the next two drugs are administered. *Id.* Cook's allegation that the ADC lacks appropriate safeguards to ensure the sodium thiopental it obtained "is not contaminated, is viable, and is actually sodium thiopental" is also conclusory and without any supporting factual allegations. Moreover, Cook's assertion that "the substance was obtained in violation of federal law" is again speculative and Cook has not made a sufficient showing that the lack of FDA approval of the sodium thiopental at issue here makes it sufficiently likely that the sodium thiopental is either not what it purports to be, or is otherwise adulterated.[3] Rather, Cook relies on his allegations that Arizona's sodium thiopental is imported and not approved by the FDA. But *Landrigan*, 131 S. Ct. 445, advises that these facts are not sufficient to state a plausible Eighth Amendment claim. Like the instant case, *Landrigan* involved an Arizona death row inmate challenging Arizona's use of imported, non-FDA-approved sodium thiopental. Reversing the Ninth Circuit, the Supreme Court held that the district court abused its discretion in granting Landrigan's motion for a preliminary injunction to stay his execution.

**[4]** Cook distinguishes *Landrigan* on the grounds that it involved a preliminary injunction, whereas the instant case involves a motion to dismiss. Thus, while Landrigan had to provide enough evidence to make success on his claim "likely," Cook only needs to allege enough facts to make his claim "plausible." Nevertheless, the Court in *Landrigan* found "no evidence in the record to suggest that the drug obtained from

---

[3]We express no view as to whether the sodium thiopental was obtained in violation of federal law. The actual legality of importing this drug is not at issue here, we are only concerned with the constitutionality of its use on Mr. Cook.

a foreign source is unsafe." *Id.* This statement clearly implies that the facts that Arizona's sodium thiopental is imported and non-FDA approved do not themselves constitute evidence of danger. Thus, in this case, Cook's bare allegations that the sodium thiopental is imported and non-FDA approved, even taken as true, do not plausibly suggest that the drug is "*sure or very likely* to cause serious illness and needless suffering" or otherwise creates a "substantial risk of serious harm" in violation of Cook's Eighth Amendment right to be free from cruel and unusual punishment sufficient to survive a motion to dismiss. *Baze*, 553 U.S. at 50; *see also Iqbal*, 129 S. Ct. at 1949.

**[5]** We also reject any claim Cook makes that the administration of the allegedly incorrect, diluted or adulterated drug would cause him excrutiating pain when the other two drugs are administered.[4] We have recently upheld Arizona's lethal injection protocol in *Dickens*, when we stated that "the protocol's safeguards are adequate under the *Baze* standard." 631 F.3d at 1141. We noted the following facts about the administration of the sodium thiopental:

> After the sodium thiopental is administered, the [Members of the Medical Team ("MTMs")] confirm that the inmate is unconscious by "sight and sound" using the camera and microphone, and an MTM enters the execution chamber to physically confirm unconsciousness. If the inmate is conscious, the Director of the [ADC] may order the [Special Operations Team ("SOT")] members to administer an additional dose of sodium thiopental, and the MTMs go through the same steps to verify unconsciousness. The SOT members cannot administer the

---

[4]To the extent that Cook alleges that the process of administering a substance that is not sodium thiopental, or is a diluted or adulterated version of sodium thiopental could itself potentially cause him unconstitutional pain, he offers no factual support to support such an assertion.

pancuronium bromide until the MTMs have con-
firmed that the inmate is unconscious and at least
three minutes have elapsed from the commencement
of the administration of the sodium thiopental. The
IV lines are flushed with heparin/saline between
each injection, to ensure that they are clean and func-
tioning properly.

*Id.* at 1143.

**[6]** Nothing in Cook's Complaint suggests that, even if he
were to receive a substance that was not sodium thiopental, or
was diluted or adulterated and failed to properly anesthetize
him, Arizona's protocol would fail to identify the problem
and halt the process to prevent the administration of the
pancuronium bromide and potassium chloride. Cook's reli-
ance on speculative and conclusory allegations is insufficient
to state a facially plausible claim that the sodium thiopental
the ADC has obtained is "*sure or very likely* to cause serious
illness and needless suffering" in violation of his Eighth
Amendment right to be free from cruel and unusual punish-
ment. *See Baze*, 553 U.S. at 50; *see also Iqbal*, 129 S. Ct. at
1949. We therefore affirm the district court as to Cook's first
claim.

**[7]** Cook's second claim is dependant on the sufficiency of
his first claim. Cook argues that the medical professionals
who would administer the foreign-manufactured non-FDA
approved substance would know that administering this drug
involves substantial risks and that by administering the drug
they would demonstrate deliberate indifference to his medical
needs. However, because Cook fails to make a facially plausi-
ble claim that the sodium thiopental at issue here is "*sure or
very likely* to cause serious illness and needless suffering," or
otherwise creates a "substantial risk of serious harm" he can-
not show that the medical officials administering the drug
would be medically indifferent. *Id.*

Because Cook has failed to demonstrate that the district court erred as to either of his claims, the judgment of the district court is

**AFFIRMED.**