**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

COALITION TO DEFEND AFFIRMATIVE
ACTION; INTEGRATION AND
IMMIGRANT RIGHTS AND FIGHT FOR
EQUALITY BY ANY MEANS
NECESSARY, (BAMN); DEFEND
AFFIRMATIVE ACTION PARTY,
(DAAP); ISSAMAR CAMACHO;
JEREMY BAMIDELE; MARIA BELMAN;
JONATHAN BROOKS; CHRISTIAN IVAN
BURGOS; MAYRA CASILLAS; BIANCA
CENTENO; CALVIN JEVON COCHRAN;
ADAN DE LA CRUZ, by his next
friend Luis De La Cruz; OMAR
SERAG ELDIN, by his next friend
Gamil Serag Eldin; JOSE FLORES;
MICHELLE FLORES, by her next
friend Victoria Barranco; JENESIS
FONSECA, by her next friend
Angelica Ledezma; GABRIELA
GALICIA; ILIANA GALLAGA; JOSE
GARCIA; MIYUKI GOMEZ, by her
next friend Rosa Maria Gomez;
PATRICIA GONZALEZ; ANTHONY
KEOKI GRACIA; RABIAH HARRISON;
ROSE ANITA HERNANDEZ; ZAIRA
HERNANDEZ; DANIEL DE JESUS
HERRERA; BRENDA IGLESIAS;

Jessica Jimenez; Sarah Kim;
Dominique Lofgren; Antonio
Love; Nayeli A. Maravillas, by
her next friend Martin Maravillas;
Gabriela Martinez, by her next
friend Dora Martinez; Javier
Meza; Gladys Morales, by her
next friend Rocio Morales; Jalima
Morales; Aislyn T. Namanga;
Han Kyul Noh, by his next friend
Lucia Noh; Nicholas Ogbuehi;
Auria Perez; Maria Elena
Polanco, by her next friend Adela
Santibana; Japhinma Power;
Merari Ramirez; Nancy J.
Rodriguez, by her next friend
Lucia Castillo; Aaron Sampson;
Andrew Sanchez; Dominique
Short-Thomas; Alejandra Solis,
by her next friend Rosa
Desormaux; Desiree Tienturier;
Jasmine Tovar, by her next friend
Luz Tovar; Brenda Trujillo; Jose
Roberto Valenzuela; Ruby
Villarruel, by her next friend
Olivia Villarruel; Jerrica Webb;
Tanisha West; Amber Williams,
by her next friend Carlette King-
Williams; Ricardo Zazueta,
*Plaintiffs-Appellants,*

v.

EDMUND G. BROWN, JR., in his
official capacity as Governor of
the State of California; MARK
YUDOF, in his official capacity as
President of the University of
California,

*Defendants-Appellees,*

and

WARD CONNERLY; AMERICAN CIVIL
RIGHTS FOUNDATION,

*Defendants-Intervenors -
Appellees.*

No. 11-15100

D.C. No.
3:10-cv-00641-SC

COALITION TO DEFEND AFFIRMATIVE
ACTION; INTEGRATION AND
IMMIGRANT RIGHTS AND FIGHT FOR
EQUALITY BY ANY MEANS
NECESSARY, (BAMN); DEFEND
AFFIRMATIVE ACTION PARTY,
(DAAP); ISSAMAR CAMACHO;
JEREMY BAMIDELE; MARIA BELMAN;
JONATHAN BROOKS; CHRISTIAN IVAN
BURGOS; MAYRA CASILLAS; BIANCA
CENTENO; CALVIN JEVON COCHRAN;
ADAN DE LA CRUZ, by his next
friend Luis De La Cruz; OMAR
SERAG ELDIN, by his next friend
Gamil Serag Eldin;

JOSE FLORES; MICHELLE FLORES, by her next friend Victoria Barranco; JENESIS FONSECA, by her next friend Angelica Ledezma; GABRIELA GALICIA; ILIANA GALLAGA; JOSE GARCIA; MIYUKI GOMEZ, by her next friend Rosa Maria Gomez; PATRICIA GONZALEZ; ANTHONY KEOKI GRACIA; RABIAH HARRISON; ROSE ANITA HERNANDEZ; ZAIRA HERNANDEZ; DANIEL DE JESUS HERRERA; BRENDA IGLESIAS; JESSICA JIMENEZ; SARAH KIM; DOMINIQUE LOFGREN; ANTONIO LOVE; NAYELI A. MARAVILLAS, by her next friend Martin Maravillas; GABRIELA MARTINEZ, by her next friend Dora Martinez; JAVIER MEZA; GLADYS MORALES, by her next friend Rocio Morales; JALIMA MORALES; AISLYN T. NAMANGA; HAN KYUL NOH, by his next friend Lucia Noh; NICHOLAS OGBUEHI; AURIA PEREZ; MARIA ELENA POLANCO, by her next friend Adela Santibana; JAPHINMA POWER; MERARI RAMIREZ; NANCY J. RODRIGUEZ, by her next friend Lucia Castillo; AARON SAMPSON;

ANDREW SANCHEZ; DOMINIQUE
SHORT-THOMAS; ALEJANDRA SOLIS,
by her next friend Rosa
Desormaux; DESIREE TIENTURIER;
JASMINE TOVAR, by her next friend
Luz Tovar; BRENDA TRUJILLO; JOSE
ROBERTO VALENZUELA; RUBY
VILLARRUEL, by her next friend
Olivia Villarruel; JERRICA WEBB;
TANISHA WEST; AMBER WILLIAMS,
by her next friend Carlette King-
Williams; RICARDO ZAZUETA,
                    *Plaintiffs-Appellees,*

            v.

EDMUND G. BROWN, JR., in his
official capacity as Governor of
the State of California,
                    *Defendant,*

MARK YUDOF, in his official
capacity as President of the
University of California,
                    *Defendant-Appellant,*

            and

WARD CONNERLY; AMERICAN CIVIL
RIGHTS FOUNDATION,
                    *Defendants-Intervenors.*

No. 11-15241

D.C. No.
3:10-cv-00641-SC

OPINION

Appeal from the United States District Court
for the Northern District of California
Samuel Conti, Senior District Judge, Presiding

Argued and Submitted
February 13, 2012—San Francisco, California

Filed April 2, 2012

Before: A. Wallace Tashima and Barry G. Silverman,
Circuit Judges, and Marvin J. Garbis,
Senior District Judge.*

Opinion by Judge Silverman;
Partial Concurrence and Partial Dissent by Judge Tashima

---

*The Honorable Marvin J. Garbis, Senior District Judge for the U.S. District Court for the District of Maryland, sitting by designation.

## COUNSEL

George B. Washington (argued), Shanta Driver (argued), Detroit, Michigan, and Ronald Cruz, Oakland, California, Scheff, Washington & Driver, P.C., for the plaintiffs-appellants.

Antonette B. Cordero (argued), Office of the California Attorney General, Los Angeles, California, and Andrew W. Stroud and Margaret C. Toledo, Mennemeier, Glassman & Stroud LLP, Sacramento, California, for defendant-appellee Governor Edmund G. Brown, Jr.

Bradley S. Phillips (argued), Michelle T. Friedland, and Soraya C. Kelly, Munger, Tolles & Olson LLP, Los Angeles, California, for defendant-cross-appellant Mark Yudof.

Ralph W. Kasarda (argued) and Daniel A. Himebaugh, Pacific Legal Foundation, Sacramento, California, for intervenors-defendants Ward Connerly and American Civil Rights Foundation.

Anthony T. Caso, Law Office of Anthony T. Caso, Orange, California, for amici curiae Center for Constitutional Jurisprudence and California Association of Scholars.

James S. Detamore, Mountain States Legal Foundation, Lakewood, Colorado, for amici curiae Mountain States Legal Foundation and Center for Equal Opportunity.

Michael Rosman, Center for Individual Rights, Washington, D.C., for amicus curaie Center for Individual Rights.

David R. Cole, the Arizona Attorney General's Office, Phoenix, Arizona, for amicus curiae State of Arizona.

Kenneth C. Yeager, Drociak, Yeager & Associates, Los Angeles, California, for amici curiae Los Angeles NAACP and California Branches.

Wilson R. Huhn, Pepper Pike, Ohio, for amicus curiae Committee of Law Professors and Historians.

Winifred V. Kao, Asian Law Caucus, San Francisco, California, for amicus curiae California Social Science Researchers and Admissions Experts.

## OPINION

SILVERMAN, Circuit Judge:

Plaintiffs are California high school and college students who allege that section 31 of article I of the California Constitution violates the Equal Protection Clause of the Fourteenth Amendment and causes the unfair exclusion of African American, Latino, and Native American students from higher education. They seek to enjoin Governor Edmund G. Brown and Mark Yudof, President of the University of California, from enforcing section 31. Yudof asserts that he is immune from suit under the Eleventh Amendment and that he is an improper defendant pursuant to Federal Rule of Civil Procedure 21. Although we hold that Plaintiffs' suit against Yudof is not barred by Eleventh Amendment immunity, we also hold that Plaintiffs' equal protection challenge to section 31 is precluded by *Coalition for Economic Equity v. Wilson (Wilson II)*, 122 F.3d 692 (9th Cir. 1997), where we previously upheld

the constitutionality of section 31. The district court correctly dismissed the complaint against the governor and Yudof for failure to state a claim.

## I.   *FACTUAL AND PROCEDURAL BACKGROUND*

The University of California is a public university system governed by the Regents of the University of California ("U.C. Regents"), a board with "full powers of organization and government," including the authority to set the University's admission policy. Cal. Const. art. IX, § 9. Plaintiffs allege that, as a result of the civil rights movement, the U.C. Regents adopted affirmative action programs to increase the number of African American, Latino, and Native American students. The programs were effective in rapidly and significantly increasing the number of underrepresented minorities.

In November 1996, Californian voters adopted Proposition 209, which amended the California Constitution to provide:

> (a) The state shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting.
>
> . . . .
>
> (f) For the purposes of this section, "state" shall include, but not necessarily be limited to, the state itself, any city, county, city and county, public university system, including the University of California, community college district, school district, special district, or any other political subdivision or governmental instrumentality of or within the state.

Cal. Const. art. I, § 31.

Several individuals and groups immediately brought suit under 42 U.S.C. § 1983 against state officials and political subdivisions of the state, alleging, inter alia, that section 31 violated the Equal Protection Clause. *See Coal. for Econ. Equity v. Wilson (Wilson I)*, 946 F. Supp. 1480, 1488-90 (N.D. Cal. 1996). The district court in *Wilson I* granted the requested relief by the plaintiffs, holding that section 31 was likely unconstitutional and granting a preliminary injunction enjoining its enforcement. *Id.* at 1520.

On appeal, we vacated the preliminary injunction and remanded the matter because the plaintiffs had shown no likelihood of success on the merits of their claims. *Wilson II*, 122 F.3d at 710-11. In so doing, we rejected the plaintiffs' equal protection claim under both a conventional equal protection analysis and a political-structure equal protection analysis. *Id.* at 701-09. Under a conventional analysis, the court "focuses on whether the government has classified individuals on the basis of impermissible criteria." *Valeria v. Davis*, 307 F.3d 1036, 1039 (9th Cir. 2002). We held in *Wilson II* that section 31 is constitutional under a conventional equal protection analysis because it "prohibits the State from classifying individuals by race or gender" and, therefore, it "*a fortiori* does not classify individuals" impermissibly. 122 F.3d at 702. Under a political-structure analysis, the question is whether a state action creates "a political structure that treats all individuals as equals . . . [but] place[s] special burdens on the ability of minority groups to achieve beneficial legislation." *Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457, 467 (1982) (citation and quotation marks omitted). Applying this analysis, we determined that section 31 was constitutional because the law "addresse[d] in neutral-fashion race-related and gender-related matters." 122 F.3d at 707. Section 31 prohibited preferential treatment, we held, not "equal protection rights against political obstructions to equal treatment." *Id.* at 708.

After section 31 became law, the University ceased considering race or sex in student admissions. The year after section

31 passed, the number of African American, Latino, and Native American freshmen at UCLA and U.C. Berkeley dropped by over 50%. The U.C. Regents have attempted to mitigate the drop in underrepresented minorities by adopting a "comprehensive review" of applicants, utilizing different standardized tests, admitting the top 4% of graduates from any high school, and decreasing the weight of standardized tests. It is alleged that these measures have had only a minor impact on the number of underrepresented minority students.

Plaintiffs initiated the instant putative class action to once again challenge the constitutionality of section 31 under conventional and political-structure equal protection analyses. Defendants U.C. Regents, then-Governor Arnold Schwarzenegger, and Yudof moved to dismiss the complaint, asserting (along with other defenses) that they were immune from suit under the Eleventh Amendment and that they were not proper defendants. Former U.C. Regent Ward Connerly, the American Civil Rights Foundation, and the California Association of Scholars then moved to intervene as defendants and filed a motion to dismiss the complaint under Rule 12(b)(6).

The district court allowed Connerly and the American Civil Rights Foundation to intervene. The court dismissed the U.C. Regents on sovereign immunity grounds, which Plaintiffs have not appealed. The district court then denied the motions to dismiss by former Governor Schwarzenegger and Yudof. The court ruled that the governor and Yudof were not immune from suit and were proper defendants because they were sufficiently connected to the enforcement of section 31 through their respective roles as President of the U.C. Regents and President of the University. In a separate order, the district court dismissed with prejudice both of Plaintiffs' claims, holding that it was bound by *Wilson II* to uphold the constitutionality of section 31.

Plaintiffs appeal the dismissal of their claims, and Yudof cross-appeals the district court's decision to deny him state

immunity and to keep him in the suit. Governor Brown was then substituted as a defendant.

## II.   *JURISDICTION AND STANDARD OF REVIEW*

We have jurisdiction pursuant to 28 U.S.C. § 1291. We "review de novo a district court's order granting a motion to dismiss under Rule 12(b)(6)," *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). A denial of Eleventh Amendment immunity is also reviewed de novo. *Eason v. Clark Cnty. Sch. Dist.*, 303 F.3d 1137, 1140 (9th Cir. 2002). We review a district court's decision to dismiss with prejudice for abuse of discretion. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1018 (9th Cir. 2011).

## III.   *DISCUSSION*

### A.

Because our precedent dictates that we resolve an Eleventh Amendment immunity claim before reaching the merits, we first address Yudof's cross-appeal. *See In re Jackson*, 184 F.3d 1046, 1048 (9th Cir. 1999). Yudof argues that the district court erred in denying him Eleventh Amendment immunity. We disagree.

[1]  "The Eleventh Amendment erects a general bar against federal lawsuits brought against a state." *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). It does not, however, bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law. *See Ex parte Young*, 209 U.S. 123, 155-56 (1908); *Alden v. Maine*, 527 U.S. 706, 747 (1999). The individual state official sued "must have some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. at 157. In addition, that connection "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the chal-

lenged provision will not subject an official to suit." *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992).

**[2]** Relying primarily on *Snoeck v. Brussa*, 153 F.3d 984 (9th Cir. 1998), Yudof contends that the district court improperly denied him Eleventh Amendment immunity. *Snoeck* held that members of a judicial discipline commission were immune from suit under the Eleventh Amendment because they had no enforcement power over the challenged rule. *Id.* at 987. The plaintiffs in *Snoeck* alleged that the commissioners violated their First Amendment rights by prohibiting them from disclosing the facts contained in their complaints against two Nevada judges. *Id.* at 985. Pursuant to the Nevada Constitution, the Nevada Supreme Court adopted judicial rules that required confidentiality, and that allowed it to hold in contempt those who breached confidentiality. *Id.* We held that the commissioners were immune from suit because the commission had no power of contempt and could not amend the judicial rules. *Id.* at 987.

Analogizing the instant case to *Snoeck*, Yudof argues that he lacks authority to amend, repeal, deviate from, or enforce section 31. He asserts that he can only comply with section 31, but cannot punish those who do not, just like the commissioners in *Snoeck*. Without a connection to the enforcement of section 31, he claims he cannot be sued.

The district court correctly denied Eleventh Amendment immunity pursuant to *Eu*, 979 F.2d at 704. In *Eu*, the plaintiff alleged that a statute limiting the number of superior court judges caused delays in civil litigation and deprived litigants of access to the courts. *Id.* at 699. The governor and secretary of state contended that they lacked a connection with the enforcement of the statute. *Id.* at 704. This court rejected that argument and held that the officials had a "fairly direct" and "specific connection" to enforcement of the law because they appointed judges to newly created positions and certified subsequent elections for those positions. *Id.* The statute was

"being given effect" by the officials, and therefore the state officials were not immune from suit. *Id.*

**[3]** Applying *Ex parte Young* and *Eu*, we hold that Yudof is not immune from Plaintiff 's suit seeking prospective declaratory and injunctive relief relating to the admission criteria of the university of which he is president. Yudof has a "fairly direct" connection, to say the least, to the enforcement of section 31. *See Eu*, 979 F.2d at 704. As the head of the University of California, he does more than just "live with" section 31. He enforces it. He is duty-bound to ensure that his employees follow it and refrain from using race as a criterion in admission decisions. Yudof's argument that he is merely "implementing," not "enforcing" section 31, minimizes his role as President of the University and is inconsistent with *Eu*. Lastly, Yudof's reliance on *Snoeck* is unavailing. Unlike *Snoeck*, where the Nevada Supreme Court was expressly charged with enforcement, 153 F.3d at 987, section 31 does not designate *any* entity to commence enforcement proceedings. At the University of California, the buck stops with Yudof.

## B.

Turning to the merits, Plaintiffs argue that section 31 is unconstitutional under a "conventional equal protection analysis" because it allows admission officials to depart from the University's baseline admission criteria for any purpose—veteran status, income, geographical background, athleticism, or legacy—but not for "racial diversity" or to address "*de facto* racial segregation and inequality." This, Plaintiffs argue, "driv[es] down minority admissions" and treats African American, Latino, and Native American students unequally from their Asian American and white counterparts. Plaintiffs also allege that section 31 is unconstitutional because it created an "unequal political structure" that prevents racial minorities from "using the normal democratic process to seek votes by the [U.C.] Regents to reverse . . . [the] ban on affir-

mative action in admissions." While other individuals and groups may petition the U.C. Regents to change the admission policy, African Americans, Latinos, and Native Americans must persuade the electorate to repeal or amend section 31.

**[4]** Our prior decision in *Wilson II* dealt with and rejected both of these arguments. In *Wilson II*, this court held that, "[a]s a matter of 'conventional' equal protection analysis, there is simply no doubt that Proposition 209 is constitutional." 122 F.3d at 701. *Wilson II* further held that section 31, under a political-structure equal protection analysis, did not violate the Fourteenth Amendment. 122 F.3d at 704-09.

**[5]** We are bound by *Wilson II*. *See Santamaria v. Horsley*, 110 F.3d 1352, 1355 (9th Cir. 1997) ("It is settled law that one three-judge panel of this court cannot ordinarily reconsider or overrule the decision of a prior panel."). Pursuant to *Wilson II*, we affirm the district court's dismissal of Plaintiffs' claims with prejudice. *See Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991) (holding that dismissal with prejudice is proper when "it is clear, upon *de novo* review, that the complaint could not be saved by any amendment").

Plaintiffs argue that *Wilson II* is inapposite because it was a facial challenge of section 31, whereas Plaintiffs here bring an as-applied constitutional challenge. They assert that the *Wilson II* court did not contemplate section 31's effects on higher education.

**[6]** As the district court noted, however, the *Wilson II* court considered the very scenario Plaintiffs now allege. In *Wilson II*, we "accept[ed] without question[ ] the district court's findings that [section 31] burdens members of insular minorities . . . who otherwise would seek to obtain race-based and gender-based preferential treatment from local entities." 122 F.3d at 705. The district court in *Wilson I* made specific findings regarding the effects section 31 would have on higher education and expressly found that the number of African

American and Native American students across the University would fall by as much as 50%. 946 F. Supp. at 1497. This factual finding by the district court is in line with the facts alleged in the complaint. The *Wilson II* court clearly relied on the district court's findings. *See Wilson II*, 122 F.3d at 698 ("It further would cause enrollment of African-American, Latino, and American Indian students in public colleges to fall . . . ."). Thus, Plaintiffs' contention that *Wilson II* did not address and therefore does not foreclose their as-applied equal protection challenge fails.

To try to get out from under *Wilson II*'s binding precedent, Plaintiffs also argue that *Wilson II* is irreconcilable with *Grutter v. Bollinger*, 539 U.S. 306, 325 (2003), which held that student body diversity is a compelling state interest and that the Constitution permits narrowly tailored race-based admission policies. *Wilson II* and *Grutter*, however, are easily reconciled.

*Grutter* upheld as *permissible* certain race-based affirmative action programs. *Id.* It did not hold that such programs are constitutionally *required*. *See Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 249 (6th Cir. 2006) ("*Grutter* never said, or even hinted, that state universities *must* do what they narrowly *may* do.").[1] Furthermore, as the district court pointed out,

> [In *Grutter*,] the Supreme Court cited the "race-neutral alternatives" to racial preferences used by "Universities in California, Florida, and Washington State, where racial preferences are prohibited by

---

[1]The Supreme Court appears poised to reconsider whether race-based affirmative action programs are even permissible at all. On February 21, 2012, the Court granted certiorari in *Fisher v. University of Texas*, No. 11-345, 2012 WL 538328 (U.S. Feb. 21, 2012). The question presented is: "Whether . . . [its] decisions interpreting the Equal Protection Clause of the Fourteenth Amendment, including *Grutter* . . . permit the University of Texas at Austin's use of race in undergraduate admissions decisions."

state law." [539 U.S. at 342.] The Court suggested that California and other states were "laboratories" experimenting with alternatives to racial preferences, writing: "Universities in other States can and should draw on the most promising aspects of these race-neutral alternatives as they develop." *Id.* This discussion refutes Plaintiffs' contention that the Supreme Court intended *Grutter* to overrule *Wilson* [*II*].

Because *Grutter* spoke only to whether race-based affirmative action programs are permitted, and not to whether they can be prohibited as was the case in *Wilson II*, it is impossible to hold that *Grutter* overrules *Wilson II*.

The bottom line is that *Wilson II* remains the law of the circuit, and the district court faithfully applied it.

The district court's order dismissing the complaint is AFFIRMED.

---

TASHIMA, Circuit Judge, specially concurring in part and dissenting in part:

Judge Silverman is, of course, entirely correct that Plaintiffs' challenge to Proposition 209 is foreclosed by *Coalition for Economic Equity v. Wilson*, 122 F.3d 692 (9th Cir. 1997) ("*Wilson II*"). I continue to believe now, as I did when the case was decided, that *Wilson II* was wrongly decided. *See Wilson II*, 122 F.3d at 711-12 (Schroeder, J., dissenting from the denial of rehearing en banc); *id.* at 712-18 (Norris, J., respecting the denial of rehearing en banc). Because, however, *Wilson II* remains the law of the circuit and, as Judge Silverman states, "[w]e are bound by *Wilson II*," I concur in Part III.B. of the majority opinion.

Part III.A is a different matter. I disagree with the majority's conclusion that the district court correctly denied Elev-

enth Amendment immunity to defendant Mark Yudof, as President of the University of California. Maj. Op. at 3567. I therefore dissent from Part III.A.

The majority relies on *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697 (9th Cir. 1992), to hold that because Yudof has a "fairly direct connection" with enforcement of § 31,[1] he therefore is not immune from suit pursuant to *Ex parte Young*. *Id.* at 704 (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)). But with regard to Yudof's claim of Eleventh Amendment immunity, this case is more like *Snoeck v. Brussa*, 153 F.3d 984 (9th Cir. 1998), than *Eu.* In *Eu*, we addressed a statute that was "simply not the type that gives rise to enforcement proceedings." *Id.* In contrast, and contrary to the majority's assertion, the law does provide for § 31 enforcement proceedings. *Cf. Snoeck*, 153 F.3d at 987. Although § 31 itself does not designate a specific state entity to commence proceedings, other provisions of the California Constitution expressly charge the Governor and the Attorney General with the duty and authority to enforce the law.[2] Cal. Const. art. V, §§ 1, 13. Those State executive officers, not Yudof, are the state officials responsible for enforcement of § 31. *See Coal. for Econ. Equity v. Wilson*, 946 F. Supp. 1480, 1492 (N.D. Cal. 1996).

In *Snoeck*, we held that the Eleventh Amendment barred suit against members of the Nevada Commission on Judicial Discipline who lacked authority to enforce the challenged rules through the exercise of contempt power or disciplinary authority. 153 F.3d at 987. We held that it was "only collateral, and of no consequence" that Commission members applied the rules and engaged in "ministerial, administrative

---

[1] Proposition 209, upon its approval by the California electorate, became Cal. Const. art I, § 31 (hereinafter "§ 31").

[2] In certain circumstances, private litigants may also bring suit to enforce § 31. *See* Cal. Const. art. I, § 31(g) ("The remedies available for violations of this section shall be the same . . . as are otherwise available for violations of then-existing California antidiscrimination law.").

practices designed to remind citizens of their duties under the rules." *Id.* Like the Commission members in *Snoeck*, Yudof lacks the authority to execute enforcement proceedings; his statutory duty is not to punish violations of the law, but to "accept and apply [the law] . . . however much [he] might disagree with [it]." *Id.* Although Yudof must implement § 31 like any other state law applicable to the University in the course of carrying out his duties as President, *Snoeck* holds that such "general administrative responsibilities" do not establish the direct connection with enforcement of the statute required by *Ex parte Young. Id.*

Because *Snoeck* is binding, I would hold that the district court erred in denying Yudof immunity. Unable to distinguish *Snoeck*, in the end the majority simply relies on the conclusory statement that "[a]t the University, the buck stops with Yudof." Maj. Op. at 3567. But that assertion is mistaken as a matter of California law, under which The Regents of the University of California administer the University and are granted the "full powers of organization and government" to do so. *See* Cal. Const. art. IX, § 9. *See also, e.g., Campbell v. Regents of the Univ. of Calif.*, 106 P.3d 976 (Cal. 2005) (noting that the Regents "as a constitutionally created arm of the state have virtual autonomy in self-governance" (internal quotation marks and citation omitted). Recognizing this, the district court granted the Regents' motion to dismiss on Eleventh Amendment immunity grounds, which dismissal has not been appealed. It is a mystery to me then, why the Regents — where the buck does stop — are entitled to Eleventh Amendment immunity, but its subordinate officer, the President of the University, is not.

As should be evident, I have never agreed with *Snoeck*'s holding or the rationale on which it is based. *See Snoeck*, 153 F.3d at 988-91 (Tashima, J., dissenting). Still, it remains the law of the circuit and this three-judge panel should give it the respect it is due. Because I conclude that *Snoeck*, rather than *Eu*, controls this case, I would reverse the district court's

denial of Eleventh Amendment immunity to defendant Yudof. I therefore respectfully dissent from Part III.A of the majority opinion.