BYE, Circuit Judge,
with whom MURPHY and KELLY, Circuit Judges, join, dissenting.
The Director is not entitled to the extraordinary remedy of a writ of mandamus. Such a remedy is proper only in cases of “a judicial usurpation of power or a clear abuse of discretion,” and only if the party seeking mandamus relief “show[s] that his right to issuance of the writ is clear and indisputable.” Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 380-81, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (internal quotations, brackets, and citations omitted). Because the district court did not clearly abuse its discretion in ordering the Director to disclose the identities of the compounding pharmacist and the testing laboratory, the petition for a writ of mandamus should be denied.[3]
Here, the majority grants this extraordinary remedy after concluding the district court abused its discretion in failing to dismiss the prisoners’ Eighth Amendment claim on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. The majority holds that, in order to survive a Rule 12(b)(6) motion, a plaintiff must now plead a “readily available alternative method” to the current method of execution the plaintiff is challenging. The majority inexplicably gleans this pleading requirement from a case which in no way addressed the pleading standard for an Eighth Amendment claim. In Baze v. Rees, 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008), Chief Justice Roberts issued a plurality opinion joined by Justices Kennedy and Alito. In Baze, multiple death row inmates brought suit against Kentucky’s Department of Corrections Commissioner. They sought to have Kentucky’s three-drug lethal injection protocol declared unconstitutional. Id. at 46, 128 S.Ct. 1520. However, Baze did not involve a Rule 12(b)(6) motion to dismiss. Instead, the parties had engaged in extensive discovery *899 and, ultimately, a seven-day bench trial during which the trial court received the testimony of approximately twenty witnesses. At the conclusion of the trial, the trial court issued a judgment upholding the execution protocol.
Chief Justice Roberts’ plurality opinion did not establish a new pleading standard, nor did it purport to do so. Chief Justice Roberts was discussing alternative methods because the plaintiffs there had proposed several alternatives as a means of demonstrating the constitutional deficiency of Kentucky’s execution protocol at the time. Baze, 553 U.S. at 56-57, 128 S.Ct. 1520. Thus, Chief Justice Roberts’ plurality opinion should not be read to create a more rigorous pleading requirement for an Eighth Amendment claim.
The majority concludes the district court committed a “clear abuse of discretion” by declaring “Plaintiffs are not required to propose an alternative method of execution” even though the two decisions of this Court which addressed Baze in no way acknowledged any such requirement. In Clemons v. Crawford, 585 F.3d 1119 (8th Cir.2009), this Court addressed whether Missouri’s execution protocol violated the Eighth Amendment in the context of grant of judgment on the pleadings. The Clemons court noted the grant of judgment on the pleadings is reviewed “under the same standard used to address a motion to dismiss for failure to state a claim under [Fed.R.Civ.P.] 12(b)(6).” Clemons, 585 F.3d at 1124 (internal quotations and citation omitted).
The Clemons court outlined the standard for establishing an Eighth Amendment claim, stating:
“[T]he Constitution does not demand the avoidance of all risk of pain in carrying out executions.” [Baze, 553 U.S. at 36, 128 S.Ct. 1520.] Instead, to establish an Eighth Amendment violation, “the conditions presenting the risk must be ‘sure or very likely to cause serious illness and needless suffering,’ and give rise to ‘sufficiently imminent dangers.’ ” Id. at 50 [128 S.Ct. 1520] (quoting Helling v. McKinney, 509 U.S. 25, 33, 34 [113 S.Ct. 2475, 125 L.Ed.2d 22] (1993)). “[T]o prevail on such a claim there must be a ‘substantial risk of serious harm,’ an ‘objectively intolerable risk of harm’ that prevents prison officials from pleading that they were ‘subjectively blameless for purposes of the Eighth Amendment.’ ” Id. at 50 [128 S.Ct. 1520] (quoting Farmer v. Brennan, 511 U.S. 825, 842, and 846 n. 9 [114 S.Ct. 1970, 128 L.Ed.2d 811] (1994)). The mere fact “an execution method may result in pain, either by accident or as an inescapable consequence of death,” does not amount to an Eighth Amendment violation. Id.
Clemons, 585 F.3d at 1125.
At no point does the Clemons court suggest a plaintiff is required to propose an alternative method of execution in order to sufficiently plead an Eighth Amendment claim. This omission is instructive because the case specifically involved the pleading standard and the opinion extensively discussed Chief Justice Roberts’ plurality opinion in Baze.
Likewise, in Nooner v. Norris, 594 F.3d 592 (8th Cir.2010), this Court addressed whether Arkansas’ execution protocol violated the Eighth Amendment in the context of a grant of summary judgment in favor of the State. Nooner articulated a standard very similar, if not identical, to the Clemons’ standard. Nooner, 594 F.3d at 598-99. The Nooner court also cited extensively to Baze, but never mentioned a readily available alternative method of execution requirement. Id. at 598-608. Nor should it have, for no such requirement exists.
*900 Other circuits have applied a similar standard post-Baze to our decisions in Clemons and Nooner. In Cook v. Brewer, 637 F.3d 1002 (9th Cir.2011), and Cook v. Brewer, 649 F.3d 915 (9th Cir.2011), the Ninth Circuit, in considering a Rule 12(b)(6) motion to dismiss, cited Baze repeatedly and stated a standard nearly identical to that set forth in Clemons and Nooner. See Cook, 637 F.3d at 1004-05; Cook, 649 F.3d at 917. Neither decision referenced a readily available alternative method as a pleading requirement for an Eighth Amendment claim.
Because this Court has previously read Baze not to have modified the pleading requirement for an Eighth Amendment claim, it is unclear how the majority can now conclude the district court “clearly abused its discretion” by reaching the same conclusion as this Court did in both Clemons and Nooner. Indeed, the district court was bound to follow the Clemons and Nooner decisions. Those decisions were properly decided, and they properly articulate this Court’s pleading requirement for an Eighth Amendment claim. To say the district court clearly abused its discretion in following those decisions is misguided.
In addition, the majority mysteriously finds error with the district court’s denial of a motion to dismiss, even though that motion involved the prisoners’ original complaint which is no longer relevant. The original complaint addressed an earlier execution protocol instituted by Missouri which utilized propofol. The district court’s December 12, 2013, discovery order, the order at issue here, addressed the prisoners’ amended complaint attacking Missouri’s use of compounded pentobarbi-tal. The December 12, 2013, discovery order in no way concerned Missouri’s use of propofol. The district court’s denial of the Directors’ earlier motion to dismiss is irrelevant to our present inquiry, and, thus, the majority’s reliance on it is misplaced.
Next, the majority elects to adopt a reading of Baze which places an absurd burden on death row inmates. The pleading standard advanced by the majority would require the prisoners to identify for the Director a readily available alternative method for their own executions. Now, any individual wishing to challenge a state’s execution method as unconstitutional must identify a readily available alternative method for their own deaths before any discovery has been conducted to survive a Rule 12(b)(6) motion to dismiss. The challenge of proposing a readily available alternative method seems nearly impossible if the prisoners are denied discovery and, thus, unable to ascertain even basic information about the current protocol. The proposition that a plaintiff must propose an alternative method for his own execution in order to state a claim for relief under the Eighth Amendment is unreasonable.
Assuming, for the sake of argument, the dicta in Chief Justice Roberts’ plurality opinion in Baze is the new pleading standard, the prisoners have still sufficiently alleged a claim under the Eighth Amendment. The prisoners seek an alternative protocol to Missouri’s current method of producing and testing compounded pentobarbital. They desire a method which ensures the chemical composition, purity, efficacy, and safety of compounded pentobarbital. The prisoners have never argued properly compounded and tested pentobarbital would not be an alternative method. Instead, the prisoners’ argument is the use of a compounded substance purported to resemble pento-barbital, acquired from a non-traditional, non-FDA-approved compounding pharmacy which likely lacks the ability to test chemicals for identity, potency, purity, *901 and contamination, is what violates the Eighth Amendment. It is clear the readily available alternative method here is one which guarantees the chemicals used in Missouri’s executions do not cause “serious illness and needless suffering” and “give rise to ‘sufficiently imminent dangers.’” Baze, 553 U.S. at 50, 128 S.Ct. 1520.
The Director next raises the question of privilege. The Director has characterized his asserted privilege as a “state secrets” privilege. This comparison is inapt, as the state secret privilege has a narrow applicability limited to cases involving national security, diplomatic secrets, and military intelligence. See Black v. United States, 62 F.3d 1115, 1118-19 (8th Cir.1995). No such issue is before the Court now. Instead, the Director seeks to avoid disclosure, asserting the compounding pharmacist and testing laboratory face the threat of harassment, intimidation, and harm. These assertions are largely unsupported. See Cal. First Amendment Coal. v. Woodford, 299 F.3d 868, 880 (9th Cir.2002) (noting the State’s fear execution team members would be identified and retaliated against was speculative). In addition, execution team members are protected by Missouri law. Mo.Rev.Stat. § 546.720.4 provides any “licensing board or department shall not censure, reprimand, suspend, revoke, or take any other disciplinary action against the person’s license because of his or her participation in a lawful execution.” This provision further minimizes any concerns of reprisal against members of the execution team.
Although the Director’s state secrets privilege argument is misguided, some courts have recognized it may be appropriate to apply state law privileges as part of the federal common law of privilege pursuant to Federal Rule of Evidence 501. See Am. Civil Liberties Union of Miss., Inc. v. Finch, 638 F.2d 1336, 1343-44 (5th Cir.1981). The Finch court outlined a two-step balancing test to determine whether to apply a state-law privilege in a case based on federal question jurisdiction. First, the court asks whether a state court would apply the privilege. Id. at 1343. If so, then the court must determine “whether the privilege is intrinsically meritorious in [the court’s] independent judgment.” Id. This inquiry requires “balancing the policies behind the privilege against the policies favoring disclosure.” Id.
Applying the first step, a state court likely would not apply the privilege to the compounding pharmacist or the testing laboratory. Mo.Rev.Stat. § 546.720 governs the execution team privilege here. Section 546.720.2 defines the execution team as:
those persons who administer lethal gas or lethal chemicals and those persons, such as medical personnel, who provide direct support for the administration of lethal gas or lethal chemicals.
Mo.Rev.Stat. § 546.720.2.
The plain meaning of section 546.720.2 limits the execution team to those individuals administering or providing “direct support” for the administration of lethal chemicals. The statute thus limits confidentiality protection to those members who are directly involved in administration of the execution. The execution team must be defined more narrowly than suggested by the Director, otherwise the “direct” in “provide direct support for the administration” would be rendered superfluous. Further, the terms “administer” and “administration” must be read in context. See United States v. Behrens, 713 F.3d 926, 929 (8th Cir.2013) (“Statutory language must be read in context and a phrase gathers meaning from the words around it.”). Because “administer” clearly refers to the actual injection of lethal *902 chemicals, this strongly suggests “administration” similarly refers to assistance of the actual injection. The phrase “such as medical personnel” further bolsters a narrow reading of the statute. As the affidavit submitted by Larry D. Sasich states, “[n]on-traditional compounding pharmacy practice resembles drug manufacturing more than it does the practice of pharmacy.” Because compounding pharmacists function more as drug manufacturers than medical personnel, they should not fall within the sweep of the statute. Testing laboratories are even less likely to be deemed analogous to “medical personnel.”
For these reasons, Missouri’s execution team privilege is inapplicable here. Yet, even assuming a state court would apply the privilege, balancing the underlying policies would favor disclosure. Accordingly, the district court did not commit a clear abuse of discretion. Although speculative, the disclosure of the compounding pharmacist’s identity — and, to a lesser extent, the testing laboratory’s identity — may result in reprisals or harassment which could impair Missouri’s ability to obtain a compounded mixture of pentobarbital in the future.
However, with regards to Missouri’s policies behind this privilege, the prisoners’ interests are much more significant. The prisoners have a significant interest in obtaining the identities of these parties to assert their constitutional right against being subjected to “serious illness and needless suffering” during execution. Baze, 553 U.S. at 50, 128 S.Ct. 1520. The prisoners’ claims revolve around the chemical composition, purity, potency, and safety of the compounded mixture of pentobarbital used by Missouri. The prisoners cannot adequately investigate their claims unless the Director discloses these identities. The supplemental declarations submitted by Mr. Sasich underscore the deficiencies of relying on the reports of the testing laboratory. Without disclosure, neither the prisoners nor the district court can effectively assess the accuracy and significance of these reports. This consideration is important because the Director has relied heavily on the testing laboratory’s reports in its efforts to demonstrate its execution protocols do not threaten serious and needless suffering.
Further, identifying the compounding pharmacist appears to be essential in determining the process used to compound these chemical mixtures. Mr. Sasich’s affidavit extensively highlights the potential problems associated with largely unregulated compounding pharmacies and the need to fully investigate their procedures to ensure the final product comports with the stringent requirements of the Eighth Amendment. Aside from disclosure, the Director has not shown how the prisoners can obtain critical information about the chemical composition, purity, potency, and safety of the compounded pentobarbital which Missouri uses in its executions.
Although the Director has some interest in keeping the identities of the testing laboratory and the compounding pharmacist confidential, that interest is outweighed by the significant interests of the prisoners in disclosure. Without this information, it is unclear whether they can adequately investigate and litigate these important claims. Thus, the Director has not carried his heavy burden of demonstrating clearly and indisputably the district court abused its discretion in ordering disclosure of the identities of the testing laboratory and the compounding pharmacist.
For the foregoing reasons, I respectfully dissent.

. Because the prisoners have not challenged the grant of mandamus relief as to the identity of the prescribing physician, I will not address that issue here.