**NOT FOR PUBLICATION**

**FILED**

**UNITED STATES COURT OF APPEALS**

FEB 28 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| MICHAEL MARTIN SANDERS, | No. 21-15333 |
| Plaintiff-Appellant, | D.C. No. 2:18-cv-01471-JAT-DMF |
| v. | |
| TRINITY SERVICES GROUP INCORPORATED; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Argued and Submitted February 9, 2024
Phoenix, Arizona

Before: BERZON, HURWITZ, and JOHNSTONE, Circuit Judges.

Michael Sanders is an Arizona state prisoner. In this 42 U.S.C. § 1983 action, he asserts Eighth Amendment violations arising from (1) Order 705 of the Arizona Department of Corrections, Rehabilitation and Reentry ("ADCRR"), which mandates the use of four-point restraints on certain prisoners being treated in non-

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1

ADCRR medical facilities, and (2) an allegedly inadequate prison diet. The district court granted summary judgment to the defendants. We have jurisdiction over Sanders' appeal under 28 U.S.C. § 1291 and affirm.

1. Sanders first raises a procedural argument, contending that the district court abused its discretion in declining to further extend the deadline to respond to the defendants' summary judgment motions. We disagree. The court originally extended the deadline by 63 days, warning Sanders that it was "not inclined to grant further extensions." When Sanders requested an additional 30 days to respond, the court extended the deadline by another 11 days despite finding that Sanders had not demonstrated diligence or provided good cause. Sanders nonetheless failed to file by the extended deadline; indeed, his eventual response would have been untimely even if the court had granted the additional 30-day extension he requested. For the same reasons, the district court did not abuse its discretion in striking Sanders' late filings.[1]

2. The district court did not err in granting summary judgment in favor of Charles Ryan, the former ADCRR director, and Chris Moody, the former warden of the Lewis Prison, on Sanders' claim that Order 705 violates the Eighth Amendment. Ryan and Moody are the only defendants named in this claim, and Sanders does not

---

[1] The court nonetheless treated the firsthand allegations in Sanders' verified complaint as true when considering the defendants' summary judgment motions.

assert that either official made any specific decisions about the use of restraints during his hospitalization. Rather, he contends that Order 705 is unconstitutional because it prevented ADCRR guards from modifying his restraints when he allegedly experienced painful post-surgery muscle cramps, and that Ryan and Moody are liable for promulgating and enforcing the Order.

We reject Sanders' claim. Order 705.10.1.7.1 expressly allows ADCRR personnel to modify or partially remove a hospitalized inmate's restraints when a medical need "is documented by a doctor." Order 705.10.1.7.1.2 specifies that "authorization from the Warden or Deputy Warden" is required only if "complete removal of restraints for a medical need" is requested. The Order is therefore not on its face "deliberately indifferent" to inmates' health and safety. *See Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1258 (9th Cir. 2016) (affirming a summary judgment in favor of a county medical center on a prisoner shackling policy that allowed medical personnel to "ask to have restraints loosened or removed as necessary"). Sanders was regularly attended to by medical staff, including nurses, during his four-day hospitalization. No provider documented a medical need for restraint modification because of muscle cramping, and nurses occasionally adjusted the restraints to prevent skin irritation and ensure proper blood flow.

3.      The cursory allegations in the operative complaint do not plausibly state a failure-to-train claim against Ryan or Moody. *See Ashcroft v. Iqbal*, 556 U.S. 662,

679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The complaint simply asserts that Ryan was generally "responsible for . . . staff hiring, supervision, deployment, and training," and that Moody "failed to train his subordinates" on the "obvious physical condition" exception in the restraint policy.[2] There is no assertion that either defendant had anything more than "general supervisory" authority over training, including any responsibility for creating or approving training materials or for carrying out training. *Coal. to Def. Affirmative Action v. Brown,* 674 F.3d 1128, 1134 (9th Cir. 2012) (quoting *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)).[3]

4.      Finally, the district court did not err in granting summary judgment on Sanders' inadequate nutrition claim. The Eighth Amendment forbids prison nutrition so inadequate as to amount to "the denial of 'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting

---

[2]      Order 705.10.1.5.3 allows restraints to be modified by ADCRR guards when an inmate is "obviously injured" or suffers from an "obvious physical condition." Ryan and Moody claim that this exception did not apply to Sanders' alleged muscle cramps. Their position is consistent with the text of Order 705.10.1.5.3, which excuses the use of four-point restraints when an inmate has an "obvious physical condition" such as "contracture of an extremity" or "deformity of an extremity" that "prevents the application and use of usual restraints." Although Sanders alleges that his cramps were "obvious," he does not assert that his pain "prevented" the application of restraints.

[3]      In any event, the failure-to-train allegations focus on the "obvious physical condition" exception in Order 705.10.1.5.3, which does not appear to apply to Sanders' claims. *See supra* n.2.

*Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  Sanders did not allege that the dietician-approved menu designed by Trinity Services Group fell below that forgiving standard.  In addition, no evidence establishes that any of Sanders's alleged medical conditions were caused by his ADCRR diet.  To the contrary, medical records confirm that he has regained nearly all the weight he lost after his hip-replacement surgery and describe him as "well developed and well nourished."

**AFFIRMED.**